

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00468-CV

PHILIP GREGORY BYRD, LUCY
LEASING CO., LLC, AND PGB AIR,
INC.

APPELLANTS

V.

VICK, CARNEY & SMITH LLP,
CANTEY HANGER LLP, AND
NANCY ANN SIMENSTAD

APPELLEES

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

This is an appeal from the trial court's final judgment incorporating a partial

summary judgment and an order of dismissal. We reverse and remand in part

and affirm in part.

## Background

Appellant Philip Gregory Byrd and appellee Nancy Ann Simenstad were divorced in Parker County, Texas, in August 2008; the judge of the 415th District Court signed an agreed decree on August 11, 2008 and a decree nunc pro tunc on November 17, 2008. At different times during the divorce proceedings, appellees Vick, Carney & Smith LLP and Cantey Hanger LLP represented Nancy. In August 2010, Philip, Lucy Leasing Co., LLC, and PGB Air, Inc. sued appellees, bringing claims arising from appellees' alleged actions during and after the divorce proceedings. Lucy Leasing and PGB Air were companies formed by Philip before the divorce; a majority of the "right, title, and interest" in both companies was awarded to Philip in the agreed decree.[1] Appellants brought claims for aiding and abetting under family code section 42.003 (child custody interference), conspiracy, fraud, conversion, defamation, unfair debt collection practices, intentional infliction of emotional distress (IIED), unjust enrichment, and violations of the temporary orders and final decree.

On January 27, 2011, Cantey Hanger filed a motion to dismiss and motion for summary judgment on all of appellants' claims. Vick Carney filed a motion for summary judgment, or in the alternative a motion to dismiss, in March 2011. Nancy filed a pro se motion to dismiss and for summary judgment.

---

[1]The interest in the companies was not confirmed as Philip's separate property; instead, all "right, title, and interest" in both companies was divided between the parties in the agreed decree. Nothing in the record shows the ownership structure of these companies.

2

Appellants filed a second amended petition in May 2011, in which they removed their section 42.003 child custody interference allegation from their aiding and abetting claim and removed their claims regarding violation of the decree and temporary orders. On June 3, the trial court heard the summary judgment motions and granted the motions of Cantey Hanger and Vick Carney on all of appellants' claims. The trial court denied Nancy's motion, however.

Nancy filed a second motion to dismiss and for summary judgment, which the trial court ultimately granted, dismissing all of appellants' claims against Nancy and making all of the orders final and appealable. *See Lehmann v. Harcon Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).

**Points on Appeal**

Appellants bring nine points. In their first five points, they contend the trial court erred by concluding it had no jurisdiction over their claims against Nancy for fraud, conspiracy, conversion, defamation, and IIED. In their sixth through ninth points, they contend that the trial court erred by granting summary judgment for Cantey Hanger on their claims for fraud, conspiracy, aiding and abetting, and IIED. Although appellants' notice of appeal indicates the intent to appeal the summary judgment for Vick Carney, appellants' prayer asks this court to reverse only the summary judgment for Cantey Hanger and the order dismissing the claims against Nancy. Therefore, we will review only the orders for Cantey Hanger and Nancy. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121

(Tex. 1970); *Murphy v. Gruber*, 241 S.W.3d 689, 700 (Tex. App.—Dallas 2007, pet. denied).

## Motion to Dismiss

Appellants did not challenge the trial court's dismissal of their unjust enrichment claim; thus, we will review the propriety of the dismissal order as to their claims for fraud, conspiracy, conversion, defamation, and IIED only.

Nancy's motion contends that because appellants' claims are based on the final decree—and thus are more properly brought in an enforcement action—they must be brought in the divorce court. According to Nancy, all of the claims against her are based on appellants' allegations that she failed to comply with the property division in the decree and that she failed to comply with the decree's provisions regarding possession of and access to the couple's children.

Although Nancy characterizes the suit as an enforcement action,[2] appellants, by their claims, do not seek to enforce the provisions of the decree; rather, they seek damages based on alleged wrongful conduct by Nancy during and after the divorce proceedings. *See James v. Easton*, 368 S.W.3d 799, 802–04 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (holding that claims against opposing litigant for wrongful conduct in lawsuit need not be brought in

---

[2] *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. § 24.008 (West 2004); *see also* Tex. Fam. Code Ann. § 9.001 (West 2006) ("A party affected by a divorce decree . . . may request enforcement of that decree by filing a suit to enforce as provided by this chapter in the court that rendered the decree."), § 9.002 ("The court that rendered the decree of divorce or annulment retains the power to enforce the property division as provided in Chapter 7.").

4

the suit in which the conduct occurs and can be the basis of an independent tort). Appellants' fraud and conspiracy claims are based on their allegations that Nancy conspired with Cantey Hanger to falsify an airplane bill of sale after the divorce and that she withdrew large amounts of money from a PGB bank account knowing she did not have the authority to do so. The conversion claims are likewise based on Nancy's alleged withdrawal of money from Lucy Leasing and PGB's bank account. The defamation and IIED claims are based on alleged actions occurring after the decree. These are not claims attempting to enforce the terms of the decree. *See Fernander v. Fernander*, No. 03-08-00222-CV, 2010 WL 1814672, at *3 (Tex. App.—Austin May 7, 2010, no pet.) (mem. op.); *Solares v. Solares*, 232 S.W.3d 873, 878 (Tex. App.—Dallas 2007, no pet.).

We conclude and hold that Nancy's claims are not enforcement claims for which the divorce court has exclusive, continuing jurisdiction[3] and, thus, that the trial court erred by granting the motion to dismiss on that ground.[4] We sustain appellants' first through fifth issues.

---

[3]*See Chavez v. McNeely*, 287 S.W.3d 840, 844–45 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that sections 9.001 and 9.002 do not provide divorce court with exclusive jurisdiction even over enforcement actions).

[4]We do not address the summary judgment part of Nancy's motion because the trial court, by dismissing her claims based on her jurisdictional arguments, did not rule on the motion.

**Summary Judgment for Cantey Hanger**

Appellants challenge the trial court's summary judgment for Cantey Hanger on their fraud, conspiracy, aiding and abetting, and IIED claims only. Therefore, we will review the propriety of the summary judgment on those claims only.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). The defendant is required to meet the plaintiff's case as pleaded to demonstrate that the plaintiff cannot prevail. *Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 751, 759 (Tex. 1976).

**Applicable Facts**

Appellants alleged in their second amended petition that Cantey Hanger and Nancy falsified a bill of sale for a Piper Seminole No. N21113 owned by Lucy Leasing to show that Nancy was a manager of Lucy Leasing and had authority to transfer ownership of the airplane. According to appellants, Cantey Hanger and Nancy did so to shift tax liability for the airplane sale to Lucy Leasing. Appellants also alleged that Cantey Hanger "purposefully failed to notify [Philip] and the [trial] Court of their changes to the Final Decree to Divorce so that the Court would grant the Motion for Judgment Nunc Pro Tunc and effectively change the division of debts past the date allowed for modification of the Decree." Appellants do not challenge summary judgment on the second allegation, only the first relating to alleged falsification of the airplane bill of sale, which is the basis of their fraud, conspiracy, and aiding and abetting claims.

Specifically, appellants alleged as their aiding and abetting claim that

> Defendant CANTEY HANGER assisted Defendant SIMENSTAD to commit fraud in the sale of aircraft belonging to Plaintiff LUCY. Defendant CANTEY HANGER aided Defendant SIMENSTAD by falsifying the bill of sale for the aircraft listing Defendant SIMENSTAD as a manager of Plaintiff LUCY and having Defendant SIMENSTAD sign as a manager of LUCY. Defendant CANTEY HANGER further assisted Defendant SIMENSTAD to evade tax liability for her sale of the aircraft and to shift the tax liability to Plaintiff LUCY.

Their conspiracy claim is that

> Defendant CANTEY HANGER conspired with Defendant SIMENSTAD to complete a fraudulent bill of sale (a federal document) for an airplane awarded to her in the Decree by signing

7

as "Nancy Byrd" and listing her title as "Manager" of Plaintiff LUCY, even though Defendant CANTEY HANGER and SIMENSTAD were aware that Defendant SIMENSTAD was never an officer, owner or manager of Plaintiff LUCY and that she changed her last name back to "Simenstad." Defendants CANTEY HANGER and SIMENSTAD did so to fraudulently avoid tax liability, shifting it to Plaintiff LUCY.

Finally, under their fraud cause of action, they claimed that

Defendants CANTEY HANGER and SIMENSTAD, with the intent to avoid paying taxes and with the intent to shift tax liability to Plaintiff LUCY, falsified an aircraft bill of sale (a federal document) and refused to properly change the registration of the aircraft. Defendant SIMENSTAD was not allowed by law to sell the aircraft directly to a purchaser on behalf of Plaintiff LUCY.

Cantey Hanger moved for summary judgment on the fraud, aiding and abetting, and conspiracy claims on the ground that it had no duty to Philip as it was not in privity with him in the divorce, that it was immune from liability for actions taken in its representation of Nancy in the divorce, and that for those reasons its alleged actions were not fraudulent as a matter of law.[5] According to Cantey Hanger, all of the alleged actions it took were in the course of

---

[5]In its "Reply In Support Of Motion . . . For Summary Judgment," Cantey Hanger contended that as a matter of law it could not have committed fraud in the sale of the aircraft because it was awarded to Nancy in the divorce. Additionally, Cantey Hanger contended that appellants "did not take any action in reliance on the alleged 'false bill of sale.'" But Cantey Hanger did not specifically amend its motion for summary judgment to raise additional grounds in its reply. Therefore, we do not consider its additional arguments in that document as additional grounds for summary judgment. *See, e.g., Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 378 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (op. on reh'g) ("A movant is not entitled to use its reply to amend its motion for summary judgment or to raise new and independent summary-judgment grounds."); *Garcia v. Garza*, 311 S.W.3d 28, 36 (Tex. App.—San Antonio 2010, pet. denied).

8

representing Nancy in the divorce suit.[6]  As evidence, Cantey Hanger attached the decree, the decree nunc pro tunc, and affidavits of two of its attorneys. Importantly, Cantey Hanger did not allege no-evidence grounds in its motion for summary judgment.

In the part of the agreed decree entitled, "Division of Marital Estate," Philip was awarded "[a]ll right, title, and interest in PGB Air, Inc. and Lucy Leasing Co., LLC, except as specifically set forth in Section IX(B)(4)" of the decree.  That section awards Nancy as her separate property three airplanes:  the Piper Seminole No. N21113, a Piper Seminole number N2950A, and an aircraft numbered N2816R.[7]  That section also states that Philip "shall not remove any part of said planes or otherwise alter their condition."

The decree ordered each party to execute—and the attorneys for the nonsignatory parties to draft—documents to transfer ownership of the airplanes to Nancy within ten days of the date of the decree.  The decree states that Nancy is not liable for any encumbrance on the airplanes, but it further provides that Nancy is responsible for any ad valorem taxes, "liens, assessments, or other charges due or to become due on the personal property awarded to" her.  The

---

[6]Cantey Hanger raised other grounds for summary judgment directed specifically at the enforcement claims, which appellants dropped from their second amended petition; therefore, we do not address those grounds.

[7]Two other planes were awarded to Philip in the "Division of Marital Estate" section of the agreed decree:  a Cessna No. 7295E and a Cessna No. 3340S; nothing in the record indicates in whose name those planes were registered or titled.

9

decree also ordered that each party should file 2007 and 2008 income taxes individually and would be entitled to 100 percent of any refund received. Philip admitted that he agreed to the terms of the August 2008 decree.

The November 17, 2008 decree nunc pro tunc contains most of the same provisions as the August 2008 decree.[8]

In one of the affidavits, an attorney averred that he represented Nancy in the divorce, post-judgment enforcement proceedings, and Byrd's personal bankruptcy proceeding. He also stated that "[a]ll actions taken by Cantey Hanger with respect to Plaintiffs were made in the course and scope of representing" Nancy. He further averred that "Plaintiff Byrd and his two defunct business entities, Lucy Leasing Co., LLC and PGB Air, Inc., have never had an attorney-client relationship with Cantey Hanger but have always been adverse to Cantey Hanger's former client," Nancy. The other attorney averred that she represented Nancy in the divorce and that all actions taken by the firm were in the course and scope of representing Nancy.

Appellants attached to their summary judgment response an affidavit from Philip in which he stated that Nancy had never been an "owner, officer, manager or director of Lucy Leasing or PGB Air." He further averred as follows:

---

[8]Philip disputes that the decree nunc pro tunc merely corrected a clerical error; however, because he did not challenge the summary judgment as to his allegations related to the entry of the decree nunc pro tunc, we will not address the dispute. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Murphy v. Gruber*, 241 S.W.3d 689, 700 (Tex. App.—Dallas 2007, pet. denied).

10

Nancy . . . sold one of the airplanes that was awarded to her in the Divorce Decree. Cantey Hanger was to draft the documents to effectuate the transfer of the airplane for me to sign on behalf of Lucy Leasing. I never received the transfer documents for me to sign. Later, I found out that Nancy . . . had sold the plane directly to another purchaser. She signed the bill of sale as "manager" of Lucy Leasing when she was never a manager of Lucy Leasing and I was the sole manager of Lucy Leasing. By doing this, she made Lucy Leasing the seller of the aircraft to the purchaser and responsible for sales tax. Neither she nor Cantey Hanger ever transferred the airplane to Nancy . . . . And they did not complete the registration for the airplane when they sold it. The aircraft is still improperly registered to Lucy Leasing to date [May 26, 2011].

Nothing in the record indicates in whose name the other two planes were registered or titled at the time of the divorce or summary judgment proceeding.

Appellants also produced a bill of sale for the Piper Seminole No. N21113 dated November 11, 2009. The trial court struck the bill of sale on Cantey Hanger's hearsay objection. Because appellants do not challenge the trial court's ruling on Cantey Hanger's objections, we may not consider the bill of sale. *See Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 137 n.15 (Tex. App.—Fort Worth 2009, pet. denied).

**Applicable Law**

Texas law authorizes attorneys to "practice their profession, to advise their clients, and to interpose any defense or supposed defense, without making themselves liable for damages." *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd); *see Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied). The purpose behind this well-established rule is to allow an attorney to fulfill his duty and zealously

11

represent his clients without subjecting himself to the threat of liability. *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g). An attorney who could be held liable for statements made or actions taken in the course of representing his client would be forced constantly to balance his own potential exposure against his client's best interest. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Such a result would act as a severe and crippling deterrent to the ends of justice because a litigant might be denied a full development of his rights. *Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *7.

To promote zealous representation, courts have held that an attorney has "qualified immunity" from civil liability, with respect to nonclients, for actions taken in connection with representing a client in litigation. *Alpert*, 178 S.W.3d at 405. This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. *Id.*; *Renfroe*, 947 S.W.2d at 287–88. For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct is sanctionable or contemptible as enforced by the statutory or inherent powers of the court. *Alpert*, 178 S.W.3d at 405. Courts have refused to acknowledge an independent cause of action in such instances "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Id.* Under the same reasoning, an attorney

12

for an opposing party may not be held liable for fraud merely for making representations to the opposing party in litigation that further the best interests of his own clients. *E.g.*, *Chu v. Hong*, 249 S.W.3d 441, 446 & n.19 (Tex. 2008); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999). If an attorney's conduct violates his professional responsibility, the remedy is public, not private. *Renfroe*, 947 S.W.2d at 287.

This rule of qualified immunity focuses on the type of conduct in which the attorney engages rather than on whether the conduct was meritorious in the context of the underlying lawsuit. *Id.* at 288. "[I]t is the *kind*—not the *nature*—of conduct that is controlling." *Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *7; *see Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532–33 (N.D. Tex. 1996) (mem. op. and order). Thus, an attorney cannot be held liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney." *Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *7 (quoting *Miller v. Stonehenge/Fasa-Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998) (order)). Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard. *Id.*

An attorney's protection from liability is not boundless, however. *Id.* at *8. An attorney can be held liable by a third-party for actions that are not part of the discharge of his duties to his client. *See Alpert*, 178 S.W.3d at 406; *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, writ denied). If a lawyer participates independently in fraudulent activities, his action is "foreign to

13

the duties of an attorney." *Alpert*, 178 S.W.3d at 406; *see Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882). In other words, the law does not provide absolute immunity for every tort committed by a lawyer that may be tangentially related to his professional role or which may occur during litigation. *See Bradt*, 892 S.W.2d at 71–72*; see also Miller*, 993 F. Supp. at 464. By way of extreme example, an attorney who assaults the opposing party or lawyer during trial could be held liable for that act. *See Bradt*, 892 S.W.2d at 72.

"An attorney who *personally* steals goods or tells lies on a client's behalf may be liable for . . . fraud in some cases." *Chu*, 249 S.W.3d at 446 (emphasis added); *see McCamish, Martin, Brown & Loeffler*, 991 S.W.2d at 793–94 (noting that the privity requirement prohibits a third party from suing an attorney for legal malpractice but not other torts, such as negligent misrepresentation); *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ) (holding that "[a]n attorney is liable if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person" in the course of representing his client). To be held so liable for conspiracy, the attorney must have agreed to the *injury* to be accomplished, not merely the conduct ultimately resulting in injury. *Chu*, 249 S.W.3d at 446.

**Analysis**

Here, Cantey Hanger's preparation of a bill of sale to facilitate transfer of an airplane awarded to its client in an agreed divorce decree was conduct in

14

which an attorney engages to discharge his duties to his client. *See Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *8. But as pled by appellants, the conduct complained of is the intentional misrepresentation of Nancy's status in the bill of sale to a third party as a "Manager" of Lucy Leasing for the purpose of unlawfully relieving Nancy of tax liability for the sale and shifting that tax liability to Lucy Leasing. The focus of our analysis is on the kind—not the nature—of the attorney's alleged conduct. *Id.* at *8; *Renfroe*, 947 S.W.2d at 288. Although the preparation of a bill of sale to transfer an airplane is not conduct "foreign to the duties of an attorney," the intentional and knowing inclusion of false information in a bill of sale to assist a client in avoiding tax liability is. *Cf. Estate of Stonecipher v. Estate of Butts*, 686 S.W.2d 101, 103 (Tex. 1985); *Likover*, 696 S.W.2d at 472. *But cf. Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *9 ("Even when taken as true and construed broadly, Dixon Financial's petition alleges that the underlying purpose of the communications was for the attorneys to secure satisfaction of their clients' arbitration award.")

The alleged conduct here did not occur in an adversarial context vis a vis Nancy and Lucy Leasing. The subsequent sale of the airplane to a third party after it had already been awarded to Nancy in the agreed decree was not required by, and had nothing to do with, the divorce decree.[9] Because of the

---

[9]For the same reason, Cantey Hanger's alternative claim that only the divorce court had jurisdiction over appellants' claims fails. *See, supra*, at 4–5. We note that Cantey Hanger represented Nancy in a post-divorce suit against one of Philip's divorce attorneys and his law firm for the attorney's alleged

15

summary judgment standard of review, we are not concerned with whether appellants proved or even provided evidence of their allegations regarding the bill of sale because Cantey Hanger did not raise that issue in its motion for summary judgment. *See, e.g.*, *Delgado v. Combs*, No. 07-11-00273-CV, 2012 WL 4867600, at *2 (Tex. App.—Amarillo Oct. 15, 2012, no pet.) (mem. op.). Instead, we must address the narrow issue of whether Cantey Hanger is immune as a matter of law for its actions *as alleged by appellants*. *Nat'l City Bank of Ind. v. Ortiz*, Nos. 14-10-01125-CV, 14-10-01262-CV, 2013 WL 2120812, at *9 n.4 (Tex. App.—Houston [14th Dist.] May 16, 2013, no pet.) (op. on reh'g); *Brocail v. Detroit Tigers, Inc.*, 268 S.W.3d 90, 109 (Tex. App.—Houston [14th Dist.] 2008, pet. denied), *cert. denied*, 558 U.S. 877 (2009). Under the reasoning of the above cases, such alleged actions, if true, would not shield an attorney from liability simply because he or she undertook those actions in the course of representation of a client. *Cf. Toles v. Toles*, 113 S.W.3d 899, 912 (Tex. App.—Dallas 2003, no pet.) (holding that similar argument by defendants—that they could not be liable because their actions were taken during representation of client—was not sufficient to support summary judgment on claim for aiding and abetting, breach of fiduciary duty, and conspiracy).

---

negligence during the divorce. In the suit, which was filed in the 96th District Court of Tarrant County, Nancy alleged that the attorney and Southside Bancshares negligently allowed Philip to obtain and cash a check consisting of community funds, knowing that Philip had no intention of giving Nancy her share of the money.

Accordingly, whether the allegations are true or not—and we must consider them true for purposes of reviewing the summary judgment[10]—the alleged actions are outside the scope of representation of a client and, thus, the trial court should not have granted summary judgment on the fraud, conspiracy, and aiding and abetting claims for that reason. We conclude and hold that the trial court erred by granting summary judgment for Cantey Hanger on the specific grounds raised in its motion as to appellants' fraud, conspiracy, and aiding and abetting claims.[11] We sustain appellants' sixth through eighth points.

Also in appellants' second amended petition, Philip alleged as facts supporting his IIED claim (1) that Cantey Hanger and Nancy used the couple's children as "bait" by making Philip wait to pick them up at Nancy's house while a process server was on the way, (2) that Cantey Hanger and Nancy contacted his family, friends, and business contacts for the purpose of defaming Philip by telling them he had a sexually transmitted disease to cause him emotional distress and collect money from him, and (3) that they both lied to the couple's children by telling them that he did not pay child support and did not care about them. Cantey Hanger moved for summary judgment on this claim on the following ground in addition to the immunity ground: "Plaintiff's [IIED] cause of

---

[10]Our discussion of these issues is dictated by the standard of review, and should not be considered a commentary on the viability of appellants' claims on other grounds, especially considering that appellants, in their briefing in this court, accuse Cantey Hanger and Nancy of "[t]he commission of a crime."

[11]Our holding is limited to these very narrow grounds.

action is precluded by the laundry list of other alleged causes of action brought by Plaintiffs and, therefore, should be disposed of by summary judgment."[12]

As a matter of law, the first allegation—that Cantey Hanger assisted Nancy in using the children as "bait" by advising her to make Philip wait while a process server was on the way—is not actionable because Cantey Hanger's advice was made during the course of representing Nancy in the divorce, and attempting to obtain service of process is conduct in which an attorney must necessarily engage. *See Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *8.

Philip's second and third allegations are related to conduct occurring both during and after the divorce. Cantey Hanger contends that other causes of action alleged in the second amended petition preclude an IIED action. IIED is a gap-filler tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex.

---

[12]In its reply to appellants' summary judgment response, Cantey Hanger also states that (1) a cause of action for IIED is barred because an attorney is supposed to attempt to obtain service at times when a party is known to be or suspected to be likely to appear; therefore, such actions were not extreme and outrageous, (2) because the petition itself does not allege that Cantey Hanger told anyone about the sexually transmitted disease and if it did, it was not done so maliciously and with knowing falsity, the allegation cannot support an allegation of IIED, and (3) and because the allegations regarding the children are not extreme and outrageous and unsupported by admissible evidence, they are barred. Cantey Hanger did not move for a summary judgment on these grounds, however, so the trial court could not—and we cannot—consider them. *See, e.g.*, *Reliance Ins. Co.*, 333 S.W.3d at 378; *Garcia*, 311 S.W.3d at 36.

2004). When the gravamen of a complaint is covered by another common-law or statutory tort, IIED is not available. *Id.*

Philip included the second and third allegations as grounds supporting his defamation claims, and the gravamen of those allegations is that Philip was defamed as a result. Thus, IIED is not available to Philip as a cause of action against Cantey Hanger, and the trial court did not err by granting summary judgment for Cantey Hanger on that cause of action. *See id.* at 448; *Draker v. Schreiber*, 271 S.W.3d 318, 323 (Tex. App.—San Antonio 2008, no pet.). We therefore overrule appellants' ninth point.

## Conclusion

Having sustained all of appellants' first through eighth points, we reverse the trial court's order dismissing the fraud, conspiracy, conversion, defamation, and IIED claims against Nancy, and we reverse the trial court's summary judgment for Cantey Hanger on the fraud, conspiracy, and aiding and abetting claims only. We remand this case to the trial court for further proceedings on those claims only. We affirm the remainder of the summary judgment for Cantey Hanger, the remainder of the dismissal order for Nancy, and the summary judgment for Vick Carney.[13]

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

GARDNER, J., filed a concurring and dissenting opinion.

DELIVERED: August 1, 2013

---

[13]*See Jacobs v. Satterwhite*, 65 S.W.3d 653, 665–66 (Tex. 2001).