# IN THE SUPREME COURT OF TEXAS

═══════════
No. 13-0861
═══════════

CANTEY HANGER, LLP, PETITIONER,

v.

PHILIP GREGORY BYRD, LUCY LEASING CO., L.L.C., AND PGB AIR, INC.,
RESPONDENTS

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**Argued December 4, 2014**

JUSTICE LEHRMANN delivered the opinion of the Court, in which JUSTICE GUZMAN, JUSTICE BOYD, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE GREEN filed a dissenting opinion, in which CHIEF JUSTICE HECHT, JUSTICE JOHNSON, and JUSTICE WILLETT joined.

This case concerns the scope of attorneys' immunity from civil liability to non-clients. Following the trial court's entry of a divorce decree, one of the divorce litigants sued opposing counsel for fraud and related claims in connection with the law firm's alleged preparation of a document to effectuate the transfer of personal property awarded to its client in the decree. Specifically, the litigant alleged that the document contained misrepresentations and that the firm structured the property's transfer in a manner that shifted certain tax liabilities to the litigant in

contravention of the decree. The law firm moved for summary judgment, arguing that it was immune from liability to a non-client for conduct within the scope of representation of its client in the divorce proceedings. The trial court granted the motion, but the court of appeals reversed, holding that the firm's alleged conduct was unrelated to the divorce litigation and that the firm had not conclusively established its entitlement to immunity. We hold that the firm established its affirmative defense of attorney immunity as a matter of law and therefore reverse the court of appeals' judgment.

## I. Background

Philip Byrd and Nancy Simenstad commenced divorce proceedings in 2006. Simenstad was represented in the divorce proceedings by Vick, Carney & Smith, LLP, and then by Cantey Hanger, LLP. The divorce proceedings were highly contentious, but in August 2008 the parties settled, resulting in the trial court's entry of an agreed divorce decree.

The decree awarded Simenstad three aircraft as her separate property, including a Piper Seminole that had been owned by Lucy Leasing Co., LLC, a company the decree awarded to Byrd. The decree also made Simenstad responsible for all ad valorem taxes, liens, and assessments on the aircraft. Finally, the decree ordered the parties to "execute with[in] ten days from the entry of this decree any documents necessary to effectuate the transfers contemplated herein, which shall include . . . documents necessary to transfer ownership of airplanes and the like." The "attorney for the non-signing party" was ordered to "draft the documents necessary to effectuate the transfers contemplated [in the decree]." The record does not reflect, and no party asserts, that any transfer

2

documents regarding the Piper Seminole at issue were executed within the time frame specified in the decree.

Byrd, Lucy Leasing, and PGB Air, Inc. (another company awarded to Byrd in the decree) sued Simenstad and Cantey Hanger,[1] alleging in pertinent part that, over a year after the decree was entered, Simenstad and Cantey Hanger falsified a bill of sale transferring the Piper Seminole from Lucy Leasing to a third party. Specifically, the plaintiffs alleged that Simenstad executed the bill of sale as "Nancy Byrd," a "manager" of Lucy Leasing, even though her last name had previously been legally changed to Simenstad and she "was never an owner, officer, or manager" of Lucy Leasing. They brought claims against Cantey Hanger for fraud, aiding and abetting, and conspiracy, asserting that Cantey Hanger falsified the bill of sale in order to shift tax liability for the Piper Seminole from Simenstad to Byrd in contravention of the decree.[2] Cantey Hanger answered with a general denial, a verified denial, and several affirmative defenses, including "litigation immunity or other common law immunity doctrines."

Cantey Hanger moved for summary judgment on attorney-immunity grounds, arguing that it owed no duty to Byrd or the other plaintiffs and that as a matter of law it was not liable to the plaintiffs for actions taken in the course and scope of its representation of Simenstad in the divorce

---

[1] Byrd also sued Vick Carney, but the trial court granted summary judgment in Vick Carney's favor, and Byrd did not seek review of that order. 409 S.W.3d 772, 775 (Tex. App.—Fort Worth 2013).

[2] With respect to Cantey Hanger, the plaintiffs also alleged various other acts of misconduct and asserted claims of defamation, unfair debt collection practices, and intentional infliction of emotional distress. The trial court dismissed those claims on summary judgment, Byrd did not appeal the dismissal of the defamation and debt-collection claims, and the court of appeals affirmed the dismissal of the emotional-distress claim. Accordingly, those claims are no longer at issue. *Id*. at 776, 782.

proceeding.[3] Exhibits to Cantey Hanger's motion included the decree and affidavits from two Cantey Hanger attorneys attesting that Cantey Hanger was retained to represent Simenstad in the divorce proceedings and that "[a]ll actions taken by Cantey Hanger with respect to Plaintiffs were made in the course and scope of representing Ms. Simenstad."[4]

The plaintiffs responded that Cantey Hanger's conduct—"[c]onspiring with and aiding a client to falsify documents [and] evade tax liability"—was "wrongful," was not "part of the discharge of [Cantey Hanger's] duties in representing [its] client," and thus was not protected by attorney immunity. They argued more broadly that the claims against Cantey Hanger "should be permitted because they involve fraudulent conduct." In an affidavit submitted as an exhibit to the response, Byrd testified that he had never received documents from Cantey Hanger to sign in order to effectuate the transfer of the Piper Seminole from Lucy Leasing to Simenstad, that he discovered the plane had been transferred directly to a third party, that Simenstad had signed the bill of sale as manager of Lucy Leasing even though he was the sole manager, that the plane was still registered to Lucy Leasing, and that the transaction made Lucy Leasing responsible for the sales tax.[5]

The trial court granted Cantey Hanger's summary-judgment motion and dismissed all claims against it with prejudice. The court of appeals reversed as to the fraud, aiding-and-abetting, and conspiracy claims relating to the sale of the plane. 409 S.W.3d at 782–83. The court held that,

[3] Cantey Hanger did not file a no-evidence summary-judgment motion.

[4] One of the attorneys also stated that Cantey Hanger sought postjudgment remedies on Simenstad's behalf in the divorce and represented Simenstad in Byrd's bankruptcy proceedings, but those proceedings appear unrelated to the alleged conduct at issue.

[5] The bill of sale at issue is not in the summary-judgment record. The plaintiffs attached it as an exhibit to their response, but the trial court struck it as not properly authenticated, and that order was not appealed.

4

although attorneys enjoy qualified immunity from civil liability to non-clients for actions taken in connection with representing a client in litigation, Cantey Hanger was not entitled to such immunity. *Id.* at 779–81. The court concluded that Cantey Hanger's allegedly fraudulent conduct involving the "subsequent sale" of the plane awarded to Simenstad "was not required by, and had nothing to do with, the divorce decree," and thus was "outside the scope of representation of a client." *Id.* at 781. The dissent in that court would have held that Cantey Hanger "established as a matter of law that its conduct was within the course of its representation of its client in the underlying divorce litigation against Byrd" and was thus entitled to summary judgment on its immunity defense. *Id.* at 788, 790 (Gardner, J., dissenting). We granted Cantey Hanger's petition for review to address the parties' dispute over the scope and application of the attorney-immunity doctrine.

## II. Standard of Review

We review a grant of summary judgment de novo. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Attorney immunity is an affirmative defense. *Sacks v. Zimmerman*, 401 S.W.3d 336, 339–40 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Therefore, to be entitled to summary judgment, Cantey Hanger must have proven that

there was no genuine issue of material fact as to whether its conduct was protected by the attorney-immunity doctrine and that it was entitled to judgment as a matter of law.

### III. Attorney Immunity

Texas common law is well settled that an attorney does not owe a professional duty of care to third parties who are damaged by the attorney's negligent representation of a client. *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996); *see also McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999) (explaining that a lack of privity precludes attorneys' liability to non-clients for legal malpractice). However, Texas courts have developed a more comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration over a century ago that "attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd). This attorney-immunity defense is intended to ensure "loyal, faithful, and aggressive representation by attorneys employed as advocates." *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied).

In accordance with this purpose, there is consensus among the courts of appeals that, as a general rule, attorneys are immune from civil liability to non-clients "for actions taken in connection with representing a client in litigation." *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also Toles v. Toles*, 113 S.W.3d 899, 910 (Tex. App.—Dallas 2003, no pet.); *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287–88 (Tex. App.—Fort Worth 1997, pet. denied). Even conduct that is "wrongful in the context of the

6

underlying suit" is not actionable if it is "part of the discharge of the lawyer's duties in representing his or her client." *Toles*, 113 S.W.3d at 910–11; *Alpert*, 178 S.W.3d at 406; *see also Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] March 20, 2008, pet. denied) (mem. op. on reh'g) ("[A]n attorney cannot be held liable to a third party for conduct that requires the office, professional training, skill, and authority of an attorney." (citation and internal quotation marks omitted)). However, other mechanisms are in place to discourage and remedy such conduct, such as sanctions, contempt, and attorney disciplinary proceedings. *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *3 (Tex. App.—Austin July 29, 2008, no pet.) (mem. op.); *see also Renfroe*, 947 S.W.2d at 287 ("If an attorney's conduct violates his professional responsibility, the remedy is public, not private.").[6]

Conversely, attorneys are not protected from liability to non-clients for their actions when they do not qualify as "the kind of conduct in which an attorney engages when discharging his duties to his client." *Dixon Fin. Servs.*, 2008 WL 746548, at *9; *see also Chapman Children's Trust v.*

---

[6] The majority of Texas cases addressing attorney immunity arise in the litigation context. But that is not universally the case. In *Campbell v. Mortgage Electronic Registration Systems, Inc.*, for example, the court of appeals held that attorneys hired to assist a mortgage beneficiary in the nonjudicial foreclosure of real property were immune from the borrowers' suit for wrongful foreclosure. No. 03-11-00429-CV, 2012 WL 1839357, at *6 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.); *see also Hazen*, 2008 WL 2938823, at *8 (noting that "neither the case law, nor the [attorney-immunity] doctrine's underlying policy rationales, are limited to [the litigation] setting"). Because we conclude that Cantey Hanger's alleged conduct falls within the scope of its duties in representing its client in litigation, we need not consider the attorney-immunity doctrine's application to an attorney's conduct that is unrelated to litigation but nevertheless falls within the ambit of client representation and "requires the office, professional training, skill, and authority of an attorney." *See Dixon Fin. Servs.*, 2008 WL 746548, at *7. The dissent thus mischaracterizes the scope of our opinion in asserting that we "suggest[] that this form of attorney immunity applies outside of the litigation context." *Post* at ___. We cite *Campbell* and *Hazen* merely as examples of cases in which courts have applied attorney immunity (or indicated that it could apply) outside the litigation context.

7

*Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting that "it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable"). For example, we have held that an attorney "will not be heard to deny his liability" for the damages caused by his participation in a fraudulent business scheme with his client, as "such acts are entirely foreign to the duties of an attorney." *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882); *see also Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding that attorneys were not immune from claims that they knowingly assisted their clients in evading a judgment through a fraudulent transfer). And the courts of appeals have identified examples of attorney conduct that, even if it occurred during a lawsuit, would be actionable because it does not involve the provision of legal services and would thus fall outside the scope of client representation. *See, e.g.*, *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (noting that a claim against an attorney for assaulting opposing counsel during trial would be actionable, as such conduct "is not part of the discharge of an attorney's duties in representing a party").

In this case, the parties dispute whether Cantey Hanger has conclusively proven that its alleged conduct with respect to the sale of the plane was part of the discharge of its duties in representing Simenstad in the divorce proceedings or, instead, was independent of the divorce and foreign to the duties of an attorney. In *Chu v. Hong*, we recognized that "[a]n attorney who personally steals goods or tells lies on a client's behalf may be liable for conversion or fraud in some

8

cases."[7] 249 S.W.3d 441, 446 (Tex. 2008). To that end, some courts of appeals have broadly stated that attorney immunity does not extend to an attorney's knowing participation in fraudulent activities on his client's behalf. *E.g.*, *Toles*, 113 S.W.3d at 911; *Querner v. Rindfuss*, 966 S.W.2d 661, 666 (Tex. App.—San Antonio 1998, pet. denied) ("An attorney . . . is liable if he knowingly commits a fraudulent act or knowingly enters into a conspiracy to defraud a third person."). However, other courts have taken a narrower approach to this so-called fraud exception, holding that an attorney's knowing commission of a fraudulent act "outside the scope of his legal representation of the client" is actionable. *Dixon Fin. Servs.*, 2008 WL 746548, at *8; *Hazen*, 2008 WL 2938823, at *3; *Alpert*, 178 S.W.3d at 406. These courts go on to explain that an attorney's participation in "independently fraudulent activities" is considered "foreign to the duties of an attorney" and is not shielded from liability. *Alpert*, 178 S.W.3d at 406 (citing *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ)); *see also Cunningham v. Tarski*, 365 S.W.3d 179, 192 (Tex. App.—Dallas 2012, pet. denied) (holding that there was no genuine issue of material fact as to whether the defendant's conduct was "the type of fraudulent conduct that is foreign to the duties of an attorney").

We think the latter view is consistent with the nature and purpose of the attorney-immunity defense. An attorney is given latitude to "pursue legal rights that he deems necessary and proper" precisely to avoid the inevitable conflict that would arise if he were "forced constantly to balance

---

[7] In *McCamish*, we held that an attorney can be liable to a non-client for negligent misrepresentation where "an independent duty to the nonclient [arises] based on the [attorney's] manifest awareness of the nonclient's reliance on the misrepresentation and the [attorney's] intention that the nonclient so rely." 991 S.W.2d at 792. The plaintiffs do not assert such a claim here.

9

his own potential exposure against his client's best interest." *Alpert*, 178 S.W.3d at 405 (citing *Bradt*, 892 S.W.2d at 71–72). Because the focus in evaluating attorney liability to a non-client is "on the kind—not the nature—of the attorney's conduct," a general fraud exception would significantly undercut the defense.[8] *Dixon Fin. Servs.*, 2008 WL 746548, at *8. Merely labeling an attorney's conduct "fraudulent" does not and should not remove it from the scope of client representation or render it "foreign to the duties of an attorney." *Alpert*, 178 S.W.3d at 406 (citing *Poole*, 58 Tex. at 137); *see also Dixon Fin. Servs.*, 2008 WL 746548, at *9 ("Characterizing an attorney's action in advancing his client's rights as fraudulent does not change the rule that an attorney cannot be held liable for discharging his duties to his client.").

Moreover, characterizing fraudulent conduct as an "exception" to the attorney-immunity defense brings unnecessary confusion and complexity to the analysis. In this case, for example, the parties agree that Cantey Hanger bore the initial burden of proof to establish its immunity defense, but dispute the effect of the plaintiffs' fraud allegations on that burden. Specifically, they dispute whether negating the allegations was part of Cantey Hanger's evidentiary burden, or whether the burden shifted to the plaintiffs to present sufficient evidence to raise a fact issue on the fraud claims.[9]

---

[8] We noted in *Chu* that fraud claims "against an opposing attorney in litigation" generally are not actionable because "reliance in those circumstances" is not justifiable. 249 S.W.3d at 446 n.19; *see also McCamish*, 991 S.W.2d at 794 ("Generally, courts have acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context.").

[9] The dissent in the court of appeals opined that "once Cantey Hanger established as a matter of law that its conduct was within the course of its representation of its client in the underlying divorce litigation against Byrd, it established its affirmative defense of immunity as a matter of law and . . . the burden shifted to Byrd to plead and present evidence raising a fact issue regarding the fraud exception." 409 S.W.3d at 788 (Gardner, J., dissenting) (citing *Hazen*, 2008 WL 2938823, at *8–10). The dissent then effectively concluded that no evidence supports the plaintiffs' fraud claim. *Id.* at 788–89. But a no-evidence review renders the attorney-immunity analysis wholly unnecessary. As noted above, Cantey Hanger did not move for a no-evidence summary judgment on the plaintiffs' claims, and whether the

10

But we see no reason to engage in a burden-shifting analysis. Fraud is not an exception to attorney immunity; rather, the defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client, just as it does not extend to other wrongful conduct outside the scope of representation. An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that his alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of his duties to his client. *E.g.*, *Dixon Fin. Servs.*, 2008 WL 746548, at *9; *see also Alpert*, 178 S.W.3d at 408 (holding that a claim against an attorney for conspiracy to defraud was not actionable where "the complained-of actions involve the filing of lawsuits and pleadings, the providing of legal advice upon which the client acted, and awareness of settlement negotiations—in sum, acts taken and communications made to facilitate the rendition of legal services to [the client]").

## IV. Application

Cantey Hanger is entitled to summary judgment on its immunity defense if it conclusively established that its alleged conduct was within the scope of its legal representation of Simenstad in the divorce proceedings. We hold that it did. The relevant allegations in Byrd's petition may be summarized as follows: (1) the divorce decree awarded Simenstad the aircraft at issue and assigned responsibility for the plane's ad valorem taxes, liens, and assessments to Simenstad; (2) the decree directed Simenstad's attorneys to prepare necessary documents to effectuate the plane's transfer from Lucy Leasing to Simenstad; (3) Cantey Hanger assisted Simenstad in executing a bill of sale of the

---

plaintiffs have raised a fact issue as to the elements of those claims is not before us.

plane from Lucy Leasing directly to a third party;[10] (4) the bill of sale was signed by "Nancy Byrd," a "manager" of Lucy Leasing; (5) Simenstad's name had been legally changed from Byrd back to Simenstad before she signed the document, and she had no authority to act on Lucy Leasing's behalf; and (6) by transferring the plane directly to a third party, the bill of sale shifted liability for the taxes on the plane to Lucy Leasing (and thus to Byrd) in contravention of the decree.

The court of appeals concluded that, based on these allegations, "[t]he subsequent sale of the airplane to a third party after it had already been awarded to [Simenstad] in the agreed decree was not required by, and had nothing to do with, the divorce decree." 409 S.W.3d at 781. The dissent agrees with this characterization; we do not. Byrd essentially complains that the manner in which Cantey Hanger carried out a specific responsibility assigned to it by the divorce decree—transferring ownership of the plane awarded to Simenstad—caused tax liabilities to be imposed on the parties to the divorce in a way that violated the decree. Meritorious or not, the *type* of conduct alleged falls squarely within the scope of Cantey Hanger's representation of Simenstad in the divorce proceedings.[11] *Alpert*, 178 S.W.3d at 406 ("The immunity focuses on the type of conduct, not on whether the conduct was meritorious in the context of the underlying lawsuit.").

---

[10] The nature of Cantey Hanger's alleged participation in the sale of the plane and the evidence supporting it are unclear. Again, however, any shortfalls in the evidence supporting the plaintiffs' claims are not before us.

[11] To the extent the court of appeals concludes that the parties were no longer adversarial, apparently merely because the divorce decree had already been entered, we disagree. As noted above, the parties engaged in postjudgment enforcement proceedings relating to other aspects of the decree, compliance with which continued to be a source of disagreement. Indeed, at the time the bill of sale was executed, Cantey Hanger was well past the ten-day deadline to prepare the transfer documents. Byrd could have filed a motion to enforce or for sanctions at any point, but chose not to.

Indeed, the court of appeals stated, and we agree, that "Cantey Hanger's preparation of a bill of sale to facilitate transfer of an airplane awarded to its client in an agreed divorce decree was conduct in which an attorney engages to discharge his duties to his client" and was not "foreign to the duties of an attorney." 409 S.W.3d at 780. Yet the court went on to hold that the complained-of conduct—intentional misrepresentations in the bill of sale made for the purpose of shifting tax liability from Simenstad to Lucy Leasing and Byrd—was outside the scope of Cantey Hanger's duties to its client. This simply does not follow. The *type* of conduct described in these two statements is the same; the only difference is the added detail in the latter description that makes the conduct "wrongful." Again, an attorney's conduct may be wrongful but still fall within the scope of client representation. *E.g.*, *Renfroe*, 947 S.W.2d at 287–88 (holding that attorneys were not liable to opposing parties for filing a wrongful garnishment action). We hold that Cantey Hanger has conclusively established that its alleged conduct was within the scope of its representation of Simenstad in the divorce proceedings, was not foreign to the duties of an attorney, and is thus protected by attorney immunity.[12]

We note that the court of appeals remanded the plaintiffs' fraud claims against Simenstad to the trial court. To the extent Lucy Leasing is determined to be legally responsible for taxes that

---

[12] The dissent references the judicial-proceedings privilege as support for its conclusion that attorney immunity does not apply to Cantey Hanger's alleged conduct. *Post* at ___. That privilege insulates "[c]ommunications in the due course of a judicial proceeding" or in "serious contemplation" of such a proceeding from defamation claims. *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982); *Shell Oil Co. v. Writt*, ___ S.W.3d ___, ___ (Tex. 2015). The privilege is not limited to attorneys, but covers "any statement made by the judge, jurors, counsel, parties or witnesses, . . . including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James*, 637 S.W.2d at 916–17 ("The administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation."). The privilege is an independent doctrine serving independent purposes, and it has not been raised in these proceedings.

13

Simenstad rightfully owes, its remedy is against Simenstad, not Cantey Hanger.[13] *See Dixon Fin. Servs.*, 2008 WL 746548, at \*9 (holding that the attorneys of a prevailing party in arbitration were not subject to personal liability to the opposing party for allegedly misrepresenting the scope of the arbitration award to a third party in an attempt to satisfy the award); *see also Renfroe*, 947 S.W.2d at 287 ("If an attorney's conduct violates his professional responsibility, the remedy is public, not private.").

## V. Conclusion

Cantey Hanger has conclusively established that it is immune from civil liability to the plaintiffs and that the trial court's grant of summary judgment was proper. Accordingly, we reverse that portion of the court of appeals' judgment relating to the fraud, aiding-and-abetting, and conspiracy claims against Cantey Hanger and reinstate the trial court's judgment.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 26, 2015

---

[13] The court of appeals held that the plaintiffs' claims against Simenstad "are not enforcement claims for which the divorce court has exclusive, continuing jurisdiction." 409 S.W.3d at 776. Simenstad did not file a petition for review, and we therefore express no opinion on this holding.

14