# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11141
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
March 10, 2017

Lyle W. Cayce
Clerk

JOSEPH JOHNSON, JR.,

     Plaintiff - Appellant

v.

ALISON RAE ASHMORE, also known as Alison Rae Newhouse; CRAIG
WILLIAM BUDNER,

     Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-2475

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:[*]

This is a lawsuit about a lawsuit. The chain of litigation began when Joseph Johnson sued Allison Ashmore and Craig Bunder's former clients—Affiliated Computer Services, Inc., and ACS Education Solutions, LLC—in the Northern District of Texas. That suit was over a dispute about the processing of Johnson's student loans. While a motion to dismiss was pending, Johnson

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-11141

(proceeding pro se) and Ashmore discussed a settlement. The two signed a letter outlining the terms in which Johnson would receive $10,950 and in exchange would release his claims and dismiss the lawsuit. Before that settlement was finalized, however, the district court granted the defendants' motion to dismiss and entered a final judgment against Johnson. Johnson then unsuccessfully sought relief from judgment under Rule 60(b).

Johnson next turned his attention to the courts of his home state of Maryland where he filed suit against Ashmore and her clients alleging, among other things, fraud, tortious interference, negligent misrepresentation, and breach of contract. The Maryland court dismissed the claim against Ashmore for want of personal jurisdiction, and the claim against the clients as barred by res judicata based on the ruling against Johnson on his Rule 60(b) motion in the first lawsuit.

Johnson then went back to the Northern District of Texas to file this suit against Ashmore and Budner. He asserted a number of claims, including that the two attorneys breached their implied warranty of authority as agents for their clients. The attorneys moved to dismiss, arguing res judicata, collateral estoppel, and attorney immunity from suit for actions undertaken while representing their clients. Speaking to res judicata alone, the district court granted the motion to dismiss, and Johnson appealed.

Ashmore and Budner continue to press each of the arguments that they raised before the district court. We think though that their immunity argument is sufficient to decide this case and affirm the judgment in their favor. Johnson's claims are based on Texas law. *See, e.g.*, *Angroson, Inc. v. Indep. Commc'ns, Inc.*, 711 S.W.2d 268, 270–71 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (explaining cause of action for breach of implied warranty of authority). The Supreme Court of Texas has ruled that "attorneys are immune from civil liability to non-clients 'for actions taken in connection with

2

representing a client in litigation.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App—Houston [1st Dist.] 2005, pet. denied)); *see also Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016) (discussing attorney immunity in Texas). This immunity protects even allegedly fraudulently statements made to non-clients in connection with a legal representation. *Cantey Hanger, LLP*, 467 S.W.3d at 483–86 (applying the doctrine to allegations that attorneys falsified a bill of sale for an airplane in connection with a divorce decree).

Johnson argues that he accused Ashmore and Budner of conduct that falls outside of this rule. He says, "Clearly, acting as agents without authority, making representations and entering a contract on behalf of the client the attorney had no authority to make is conduct outside the scope of the client's representation and foreign to the duties of an attorney." Accepting Johnson's pleadings as true, as we must in this procedural posture, there is still no question that Ashmore negotiated and exchanged the letter with Johnson "in connection" with her representation of her clients.[1] Ashmore was not discussing Johnson's claims with him for her health. She was about her clients' business, doing the kind of thing an attorney does for her client in the course of litigation, even if, as Johnson alleges, she did not have specific authorization from her clients to enter into the letter-agreement on their behalf. *See id.* at 483 ("[T]he focus in evaluating attorney liability to a non-client is 'on the kind—not the nature—of the attorney's conduct' . . . ." (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, 2008 WL 746548, at *8 (Tex. App.—Houston [1st Dist.] March 20, 2008, pet. denied) (mem. op.)).

---

[1] Johnson relies entirely on the actions of Ashmore to support his claims against her colleague Budner.

3

No. 16-11141

* * *

The judgment is AFFIRMED.[2]

---

[2] In his reply brief, Johnson asserts that Ashmore "was fired" from her law firm after the settlement negotiations with him. Ashmore filed a motion to strike this statement as defamatory and unsupported by the record. Because the statement is impertinent, we GRANT the motion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence . . . ." (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)); *Theriault v. Silber*, 574 F.2d 197, 197 (5th Cir. 1978) (granting motion to strike notice of appeal that contained "vile and insulting references to the trial judge."); *cf.* FED. R. CIV. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").