

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00201-CV
_____

CALEB MOORE AND THE LAW FIRM OF CALEB MOORE, PLLC, Appellant

V.

ANSON FINANCIAL, INC.

---

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2019-001471-3

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

A lawyer and his law firm have appealed the denial of their motion to dismiss under the Texas Citizens Participation Act ("TCPA"). We hold that they have established both requisites for dismissal: that this suit is based on their exercise of the protected right to petition and that they are entitled to the defense of attorney immunity. We therefore reverse and remand for dismissal and a determination of attorneys' fees, costs, and any other appropriate relief.

## I. BACKGROUND

While this case has a complicated procedural history involving suits, countersuits, and appeals that stretch across at least five different courts, there are only a few central players, all of whom are attorneys and their businesses. The first is Michael Ferguson and his lending firm, appellee Anson Financial, Inc. (collectively, "Anson"). The second is an attorney who worked for Anson, Ian Ghrist. According to Ghrist's affidavit, he helped Anson with multiple suits during the two years he worked there, and in one suit, Anson obtained a judgment for a sizeable portfolio of assets. Ghrist and Anson reached an agreement about how to split the assets, but Ghrist insisted that Anson never gave him his share. Ghrist left the firm in 2015 and looked for representation to sue Anson.

Enter the third player, Caleb Moore and his law firm, who are the appellants here (collectively, "Moore").[1] Moore represented Ghrist in his suit against Anson in the 17th District Court. Anson moved to disqualify Moore, but the motion was denied. Ultimately, Moore won Ghrist a judgment for over $300,000, which is on appeal before this court in another case.[2]

The conflict touched off other proceedings involving Anson, Ghrist, and Moore which form the backdrop for this litigation. In one suit, Anson brought a variety of claims against Ghrist and related entities in the 141st District Court, though Ghrist obtained a partial summary judgment on all but one of these claims. In another proceeding, Anson filed a grievance against Ghrist, which was denied. In still another suit, this time before the 342nd District Court, Moore represented certain third parties against Anson. Anson again moved to disqualify Moore, and as before, the motion was denied, and the suit apparently remains ongoing.

In early 2019, Anson resorted to filing this suit against Moore in County Court at Law Number 3. Anson's theory was that Moore was in a civil conspiracy to help Ghrist breach his fiduciary duty as Anson's former attorney. Anson alleged that through the conspiracy, Moore was helping Ghrist harm Anson in multiple ways. First, Ghrist had allegedly given Moore confidential information about Anson's inner

---

[1]For ease of reference, we use neuter pronouns to refer to Anson and masculine pronouns to refer to Moore.

[2]The appeal is pending in cause number 02-18-00332-CV.

3

workings, and Moore was exploiting that information when he represented third parties against Anson. Second, Anson claimed that even though it was Moore who purportedly represented the third parties, there was evidence showing that Ghrist, not Moore, had drafted the third party's petition and briefs, in violation of conflict rules. Third, Anson produced emails showing that Moore was consulting with still other third parties about suing Anson, and in those emails, Moore reported that Ghrist was excited about the prospect of bringing in more parties to attack Anson. Anson argued that by helping Ghrist cause more litigation for and harm to Anson, in breach of Ghrist's fiduciary duty, Moore was liable for the breach as a conspirator.

Shortly after Anson filed its petition, Moore filed a motion to dismiss the cause under the TCPA. Moore maintained that Anson's suit trenched on Moore's protected rights, including the right to petition. Among other things, Moore also argued that he had carried his burden to establish a defense to Anson's suit—attorney immunity— and that Anson's suit should therefore be dismissed with prejudice. The trial court denied the motion. This appeal followed.[3]

---

[3]Before the TCPA motion was decided, Anson nonsuited all its claims. However, the nonsuit does not prevent us from considering the merits of the motion. Though a plaintiff decides which of its own claims to pursue or to abandon, that decision does not control the fate of a nonmoving party's independent claims for affirmative relief. *Rauhauser v. McGibney*, 508 S.W.3d 377, 381 (Tex. App.—Fort Worth 2014, no pet.) (per curiam), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017). We have held that when a defendant's TCPA motion seeks more relief than a simple nonsuit, that motion states independent claims for affirmative relief which survive a nonsuit. *Id.* Beyond a nonsuit, Moore seeks

4

## II.    DISCUSSION

In his sole issue, Moore challenges the denial of his TCPA motion to dismiss. Moore asserts that he established all things necessary to prevail on the motion, including the applicability of the TCPA and a defense—attorney immunity—to Anson's action.

The TCPA protects citizens who associate, petition, or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). That protection comes in the form of a special motion to dismiss, subject to expedited review, for any suit that appears to stifle the defendant's exercise of those rights. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).

Reviewing a TCPA motion to dismiss requires a three-step analysis. *Id.* Under the version of the statute that governs this case,[4] the moving party must show, as a threshold matter and by a preponderance of the evidence, that the TCPA applies to the suit against it. *Id.* If the moving party meets that burden, the nonmoving party

---

dismissal with prejudice, attorneys' fees, sanctions, and costs. His TCPA motion therefore survives Anson's nonsuit.

[4]In 2019, the Texas Legislature amended the TCPA but stated that the amendments applied only to an action filed on or after the effective date of the Act, September 1, 2019, and that any action filed before that date is governed by the law in effect before that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. The amendments therefore do not apply to this suit, which was filed in early 2019, and any discussion of the TCPA herein refers to the former version of the statute.

5

must establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). If the nonmovant satisfies that requirement, the burden shifts back to the moving party to prove each essential element of any valid defenses by a preponderance of the evidence. *Id.* at 679–80.

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Beving v. Beadles*, 563 S.W.3d 399, 404 (Tex. App.—Fort Worth 2018, pet. denied). In our review, we consider the pleadings and any supporting and opposing affidavits. *Id.*

To begin, we consider the threshold question of whether the TCPA applies to Anson's suit. *See Youngkin*, 546 S.W.3d at 680. A party may invoke the TCPA dismissal procedure if that party shows by a preponderance of the evidence that the legal action against it is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association. *Id.* The exercise of the right to petition has an "expansive statutory definition" that includes any "communication in or pertaining to a judicial proceeding." *Id.* (cleaned up). "Communication" is also broadly defined, and it includes the making or submitting of a statement or document in any form or medium. *Id.*

The thrust of the suit was that Moore conspired with Ghrist to sue Anson, that Moore and Ghrist were orchestrating third-party litigation against Anson, and that Moore was communicating with still other third parties about bringing more litigation against Anson. Each of these alleged forms of misconduct is a communication in or

6

pertaining to a judicial proceeding. Because Anson's suit is based on Moore's exercise of the right to petition, Moore satisfied his initial burden to show that the TCPA applies. *See id.* at 679.

The burden therefore shifted to Anson to establish, by clear and specific evidence, a prima facie case for its conspiracy claim. *See id.* We will assume without deciding that Anson met this burden and that the burden of proof then shifted to Moore to prove each essential element of a valid defense by a preponderance of the evidence. *See id.* at 681 (same approach). Even operating under this assumption, we nevertheless hold that Moore is entitled to dismissal because he established the defense of attorney immunity. *See id.*

As a general rule, attorneys are immune from civil liability to nonclients for actions taken in connection with representing a client in litigation. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, PC*, No. 18-0595, 2020 WL 938618, at *4 (Tex. Feb. 21, 2020); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer. *Youngkin*, 546 S.W.3d at 681. "An attorney is given latitude to pursue legal rights that he deems necessary and proper precisely to avoid the inevitable conflict that would arise if he were forced constantly to balance his own potential exposure against his

7

client's best interest."[5] *Cantey Hanger*, 467 S.W.3d at 483 (internal quotation marks omitted).

The immunity inquiry focuses on the kind of conduct at issue rather than the alleged wrongfulness of the conduct. *Youngkin*, 546 S.W.3d at 681. Under this analysis, a lawyer is no more susceptible to liability for a given action merely because it is labeled as fraudulent or criminal. *Id.* Even conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the discharge of the lawyer's duties in representing a client. *Cantey Hanger*, 467 S.W.3d at 481. Rather, "other mechanisms are in place to discourage and remedy such conduct, such as sanctions, contempt, and attorney disciplinary proceedings." *Id.* at 482.

The only facts required to support an attorney-immunity defense are the type of conduct at issue and the existence of an attorney–client relationship at the time. *Youngkin*, 546 S.W.3d at 683. A court would then decide the legal question of whether the conduct was within the scope of representation. *Id.* The plaintiff's pleadings are usually the "best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

---

[5]"Though attorney immunity is broad, it is not limitless." *Youngkin v. Hines*, 546 S.W.3d 675, 682 (Tex. 2018). Attorneys are not protected from liability to nonclients for their actions that do not qualify as the kind of conduct in which an attorney engages when discharging his duties to his client. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482 (Tex. 2015). For example, immunity does not apply when an attorney participates in a fraudulent business scheme with his client, knowingly facilitates a fraudulent transfer to help his clients avoid paying a judgment, steals goods or services on a client's behalf, or assaults opposing counsel during trial. *Youngkin*, 546 S.W.3d at 682–83.

8

In its petition, Anson alleges that Moore engaged in multiple forms of misconduct while representing Ghrist and various third parties, and this misconduct demonstrates a civil conspiracy to harm Anson and to breach Ghrist's fiduciary duty to Anson as the firm's former attorney. But looking beyond the labels of misconduct and conspiracy, each of the complained-of actions is the kind of thing that an attorney would do in the course of representing a client.

First, Anson refers to a series of emails in which Moore consults with a third party about the possibility of hiring Moore to sue Anson. In the emails, Moore explains that his "client" (allegedly Ghrist) is excited about the possibility of third-party litigation against Anson, stating that "[h]e thinks it would be beneficial to all . . . the more litigation [Anson] has to deal with." Anson alleges that these emails firmly establish a civil conspiracy between Moore and Ghrist. However, at root, these emails demonstrate two kinds of conduct: (1) conferring with a client before taking on additional representations, which serves the lawyer's duty to communicate with the client, *see generally* Tex. Disciplinary Rules Prof'l Conduct 1.03, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A; and (2) enlisting a third party to join in the litigation against an opponent, which would advance the representation by forcing the opponent to defend on multiple fronts. *See Clayton v. Oldcastle Materials Tex., Inc.*, No. 09-18-00063-CV, 2019 WL 6884773, at *6 (Tex. App.—Beaumont Feb. 14, 2019, no pet.) (mem. op.) (applying attorney immunity to a lawyer's efforts to drum up third-party litigation against a defendant); *Landry's, Inc. v. Animal Legal Def. Fund*, 566

9

S.W.3d 41, 60 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (applying attorney immunity to the waging of a publicity war against defendant at the same time as a battle in court). Moore did not do these things for his own health; he did them to advance his clients' interests. *See Johnson v. Ashmore*, 681 Fed. App'x 345, 347 (5th Cir. 2017) (per curiam). Both forms of conduct are consistent and connected with the discharge of Moore's duties in representing his clients. *See Cantey Hanger*, 467 S.W.3d at 481.

Next, Anson says that its former employee Ghrist wrongfully gave Moore confidential information that Moore is exploiting in multiple suits against Anson. Again, looking past the label that Anson assigns it, this kind of conduct could fairly be characterized in a much more neutral light, as is demonstrated by *Highland Capital Management, LP v. Looper Reed & McGraw, PC*, No. 05-15-00055-CV, 2016 WL 164528 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (mem. op.). There, the plaintiff Highland sued its former employee, and the employee hired a law firm to defend him. *Id.* at *1. Highland then brought suit against the law firm itself, alleging that the former employee had given Highland's confidential information to the law firm, and that the law firm was exploiting that information in suits against Highland—much like Anson alleges here. *Id.* Highland alleged the law firm reviewed, copied, and analyzed the "stolen" confidential information in furtherance of its scheme to extort, slander, and disparage Highland; refused to return and cease use of Highland's stolen information; knowingly facilitated the employee's wrongful disclosure of that

10

information; threatened to disclose the information if its demands were not met; and engaged in other misdeeds. *Id.* The reviewing court, however, described the law firm's actions in less provocative terms: "acquiring documents from a client that are the subject of litigation against the client"; "reviewing," "copying," and "analyzing the documents"; "advising a client on a course of action"; and making "demands" on the client's behalf. *Id.* at *6. The *Highland* court concluded that these were the "kinds of actions" that were part of an attorney's duties in representing a client in "hard-fought litigation." *Id.* In the same way, here, the contested actions—which Anson labels as the wrongful exploitation of its confidential information—could fairly be stated in much more neutral terms: reviewing critical case information and utilizing that information to pursue a resolution in favor of a client. Such actions would fall within the legitimate scope of the representation. *See id.*

Finally, Anson complains that Ghrist drafted and filed certain documents for Moore. But the kind of conduct at issue—arranging for an attorney to draft legal documents for a client—is among the things a lawyer would do for a client, regardless of its alleged wrongfulness. *See Youngkin*, 546 S.W.3d at 681. We express no opinion on whether such a ghostwriting relationship might be fertile ground for another grievance. It is enough to say that any remedy for this alleged impropriety is a public one, not a private one. *See Cantey Hanger*, 467 S.W.3d at 482 ("If an attorney's conduct violates his professional responsibility, the remedy is public, not private."); *cf. Russo v. Adame*, No. 02-15-00219-CV, 2016 WL 5957017, at *4 (Tex. App.—Fort Worth

11

Oct. 13, 2016, no pet.) (mem. op.) (quoting *Blankinship v. Brown*, 399 S.W.3d 303, 311 (Tex. App.—Dallas 2013, pet. denied)) ("The Texas Disciplinary Rules of Professional Conduct expressly state that a violation of the Code of Professional Responsibility does not give rise to a private cause of action.").

Because Moore established (1) that Anson's action is based on Moore's exercise of the right to petition and (2) that the subject of Anson's suit is conduct that falls within the scope of Moore's legal representation of clients, Moore was entitled to dismissal of Anson's suit. Moore was also entitled to reasonable attorneys' fees, costs, and, under the version of the statute that governs this suit, any appropriate sanctions. *See Rauhauser*, 508 S.W.3d at 389 (explaining that these things were "mandatory" under the former version of the TCPA). We therefore sustain Moore's sole issue.

## III.  CONCLUSION

We reverse and remand the matter to the trial court to grant the motion to dismiss and to determine and award attorneys' fees, costs, and any appropriate sanctions.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  March 19, 2020

12