# Supreme Court of Texas

No. 24-0924

MV Transportation, Inc.,
*Petitioner*,

v.

GDS Transport, LLC,
*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued March 3, 2026**

JUSTICE YOUNG delivered the opinion of the Court.

Texas Rule of Civil Procedure 91a requires courts to treat an original petition's allegations as true and dismiss lawsuits that nonetheless lack a legal or factual basis for relief. The trial court correctly dismissed the fraud claim in this case under Rule 91a because the defendant's statutory immunity from liability is legally established by the petition's allegations. Specifically, the live pleading confirms the defendant's contractual authority to exercise the function of the Dallas Area Rapid Transit Authority (DART). Texas law allows a damages award against such a defendant "only to the extent that" DART would be liable. *See* Tex. Transp. Code § 452.056(d). All agree that DART could not be held liable for the fraud claim, so the

defendant here cannot be compelled to pay damages. We reverse the court of appeals' contrary judgment, reinstate the trial court's judgment of dismissal as to the fraud claim, and remand what is left of the case to the trial court.

## I

DART is one of Texas's largest regional public-transportation authorities. *See id.* § 452.056(a)(1). Within its mission is the provision of microtransit and paratransit services. Microtransit services use smaller vehicles, such as vans or shuttles, to bridge the gap between fixed-route options (like buses) and private rideshare services. Paratransit services provide specialized origin-to-destination transportation for people who cannot use fixed-route transportation. Under the Americans with Disabilities Act, grant recipients that operate fixed-route public-transportation systems must offer paratransit services to eligible people. *See generally* 49 U.S.C. § 5310; 49 C.F.R. §§ 37.123, .131.

In 2018, DART issued a request for information to begin the process of selecting a company to implement those services. It awarded the contract to MV Transportation, Inc. via a "master agreement" that is central to the resolution of this case. MV Contract Transportation, Inc.—a wholly owned subsidiary of MV Transportation that we, like the parties, call "MV Contract"—then contracted with GDS Transport, LLC for vehicles and drivers for paratransit and microtransit services. Several months after initiating performance, GDS terminated the subcontract agreement.

Litigation ensued, including in federal bankruptcy court, AAA arbitration, and Texas district court. Without detailing the timeline and complexity of those proceedings, suffice it to say that GDS brought claims

2

against DART, MV Transportation, and MV Contract for breach of contract, quantum meruit, tortious interference, fraud, and negligent misrepresentation. GDS also alleged that those parties induced it into the subcontract by making false representations about past business practices and statistics. MV Contract, in turn, sought a declaratory judgment that GDS had failed to uphold its end of the bargain by not procuring adequate vehicles, not meeting safety and operational standards, and eventually failing to render services at all. The parties ultimately agreed that the case should proceed in state court.

All three defendants moved to dismiss under Rule 91a, arguing that governmental immunity barred GDS's claims. MV Transportation and MV Contract also raised an affirmative statutory defense under which a "private operator who contracts with an authority under this chapter . . . is liable for damages only to the extent that the authority or entity would be liable" if it had been sued. Tex. Transp. Code § 452.056(d). MV Transportation and MV Contract reasoned that this protection covers them because they manage and facilitate the operation of DART's public-transportation system.

The trial court granted the Rule 91a motion in part and denied it in part. The court dismissed GDS's tort claims against all three movants and dismissed the breach-of-contract claims against MV Transportation and DART. It also cabined contract damages against MV Contract to the amount allowed by Local Government Code § 271.153. Finally, it severed and abated the remaining claims against MV Transportation and DART.

GDS appealed the dismissal of its claims against MV Transportation. The court of appeals reversed and remanded, holding that the claims for

3

breach of contract and fraud had a basis in law and that MV Transportation's immunity defense under § 452.056(d) was not established as a matter of law. 730 S.W.3d 463, 474 (Tex. App.—Dallas 2024). The court held, *see id.*, that the trial court erred in finding MV Transportation entitled to derivative immunity under § 452.056(d) or under *Fort Worth Transportation Authority v. Rodriguez*, 547 S.W.3d 830 (Tex. 2018).

In this Court, MV Transportation challenges only the reinstatement of GDS's fraud claim, which is the only issue before us.

## II

We begin by addressing the anomalous omission of the master agreement from the appellate record and, after concluding that it does not impede our review, proceed to resolve the case.

## A

The basis for MV Transportation's Rule 91a motion lies in its master agreement with DART. The live pleading (GDS's "original third-party petition and first amended original counter petition") likewise relies on the master agreement and purports to attach it as Exhibit A. The record before us, however, does not contain the master agreement, as "Exhibit A" or otherwise, although various parts appear here and there in filings that are part of the record. The parties have represented to this Court that the entire agreement was part of the trial court's record and was inadvertently omitted from the appellate record.

Parties should, of course, ensure that materials they themselves recognize as essential to their dispute are included in the record so that appellate courts can more readily perform their function of reviewing trial-court judgments. The parties should have identified the omission of

4

something as fundamental as the contract that forms the basis of this lawsuit and properly supplemented the record if needed. *See, e.g.*, Tex. R. App. P. 34.5(c). For several reasons, however, the omission here is not an obstacle to our review, and neither party suggests otherwise.

First, GDS's live pleading invokes the agreement as a basis for relief. Nothing in the text of Rule 91a (or the statute that directed this Court to adopt Rule 91a) suggests that dismissal as a matter of law would be improper when a document on which the original petition relies as a basis for relief is omitted from the record. *See generally* Tex. R. Civ. P. 91a; Tex. Gov't Code § 22.004(g). When an original petition invokes a document in that way, the document is not mere "evidence" but may instead be regarded as part of the petition itself. *See* Tex. R. Civ. P. 59. If a court deems it necessary to see the document's full contents to resolve the motion, it may demand its production without undermining its status as part of the petition.

Second, in this case, there is no need for any formalistic step of reproducing the agreement's full text or adding it to the record because the parties fully agree about its material terms. They do not dispute what the agreement says, or even what it means; to their credit, counsel for both parties acknowledged as much in open court. GDS's allegations amply describe and quote the agreement's relevant provisions, thus allowing a court to test the legal viability of GDS's claims. The only dispute, in other words, is over the legal consequences of the agreement's text, and that kind of dispute lies in Rule 91a's heartland. We therefore proceed to the merits.

5

**B**

Rule 91a.1 provides that "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Critically, "[a] cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1. "[T]he court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." *Id.* R. 91a.6. Rule 59 allows "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense" to be deemed "part of the pleadings . . . for all purposes." *Id.* R. 59. An affirmative defense, such as the one raised here, may be the proper basis of a Rule 91a motion. *See Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654–55 (Tex. 2020). Appellate courts review the merits of a Rule 91a motion de novo. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016).

Below, MV Transportation advanced two lines of argument: (1) it is entitled to some form of governmental or derivative sovereign immunity under common-law principles; and (2) it is entitled to statutory immunity from liability under Transportation Code § 452.056(d). Before this Court, however, MV Transportation has narrowed the case and advances only the § 452.056(d) argument.

This Court has noted that this provision "designates *who* is entitled to the statute's protection . . . [and] *what* protection those private contractors are afforded." *Rodriguez*, 547 S.W.3d at 843. Again, the

6

statute limits the liability of "an independent contractor" that "performs a function of [an] authority" such as DART to whatever extent "the authority . . . would be liable if the authority . . . itself were performing the function[.]" Tex. Transp. Code § 452.056(d).

Here, DART contracted with MV Transportation to provide particularized services, and to that end, MV Transportation's wholly owned subsidiary contracted with GDS. Subsection (d) requires examining DART's immunity to assess MV Transportation's exposure. The Tort Claims Act provides a limited waiver of immunity for certain suits, Tex. Civ. Prac. & Rem. Code §§ 101.021, .025, but does not waive immunity for intentional torts, *id.* § 101.057(2). Fraud is an intentional tort. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009); *see also, e.g.*, *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 n.15 (Tex. 2010). No party disputes that DART would be immune from fraud claims like the one brought by GDS if DART itself had directly undertaken the steps allegedly taken by MV Transportation.

GDS argues, however, that § 452.056(d) does not protect MV Transportation because fraud is not a "function" of DART. This Court has already rejected that argument in another context: "Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 483 (Tex. 2015) (citation omitted). True, no attorney should ever engage in fraudulent conduct; neither should DART or anyone else. But as in *Cantey Hanger*, the question here is only whether the alleged fraud arose within MV Transportation's exercise of DART's function.

7

The question is not close. The law authorizes DART to "contract with any person," Tex. Transp. Code § 452.055(a); to "contract for the operation of all or a part of the public transportation system," *id.* § 452.056(a)(3); and to "acquire, construct, develop, plan, own, operate, and maintain a [transit] system," *id.* § 452.056(a)(1). The whole point of GDS's live pleading is to confirm that DART contracted with MV Transportation to perform DART's function of managing paratransit and microtransit services. GDS's allegations emphasize with italics that DART initially issued a request for information seeking a contractor who "would *contract with and oversee service providers*. The Contractor will be the entity with the ability to *contract any of the daily operations* under the contract." "[R]ather than DART contracting directly with service providers," GDS explains, DART sought a third party to "perform all mobility management services for DART, with that contractor being responsible for engaging the service providers" such as GDS. GDS's petition confirms that MV Transportation was the contractor given this authority—that "[u]nder the Master Agreement, [MV] Transport[ation] has a contractual responsibility to manage all paratransit operations and their subcontractors" and that MV Transportation performed DART's function of "manag[ing] the paratransit and microtransit bus service."

The live pleading repeatedly emphasizes how pervasive the delegation was. "[MV] Transport[ation] was awarded *total control* over DART's [mobility management] service"—authority that GDS bitterly criticizes. The petition itself, in other words, is premised on DART's having transferred its authority to MV Transportation: "DART made a conscious decision to transfer responsibility and control of its [mobility management

8

service] operations to [MV] Transport[ation]." One cannot read the petition without concluding that MV Transportation's allegedly fraudulent conduct occurred within the scope of DART's duties to manage and develop a transit system. *Cf. Cantey Hanger*, 467 S.W.3d at 482–83.

DART's transfer of "total control" to MV Transportation included MV Transportation's authority to hire subcontractors just as DART could have. Indeed, the petition agrees that the master agreement between DART and MV Transportation listed GDS itself as a potential subcontractor, which is how GDS characterizes itself.

In short, GDS's allegations unambiguously, repeatedly, and necessarily depict MV Transportation as having been contractually granted total control of DART's relevant operations. GDS's fraud claim is thus barred by § 452.056(d) because GDS could not have recovered from DART for that claim if DART had continued to manage the operations itself. The case requires us to decide nothing more.

\* \* \*

The trial court correctly granted the Rule 91a motion. We reverse the court of appeals' contrary judgment and reinstate the trial court's judgment of dismissal as to MV Transportation. The case is remanded to the trial court for further proceedings as to any remaining claims.

Evan A. Young
Justice

**OPINION DELIVERED:** May 8, 2026

9