ACCEPTED
15-25-00235-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/5/2026 12:00 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00235-CV

# In the Fifteenth Court of Appeals
## Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/5/2026 12:00:00 AM
CHRISTOPHER A. PRINE
Clerk

# IN RE FRANK JACKSON,

## Relator

On Petition for Writ of Mandamus to the
Texas Business Court, Eleventh Division, Houston, Texas
No. 25-BC11B-00032

# REAL-PARTY-IN-INTEREST
# NORMAN THOMAS BARRAS, JR.'S
# RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Anthony G. Buzbee
Texas Bar No. 24001820
Thomas Colby Holler
Texas Bar No. 24126898
Mitchell W. Blasio
Texas Bar No. 24138469
THE BUZBEE LAW FIRM
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Tel. (713) 223-5393
tbuzbee@txattorneys.com
choller@txattorneys.com
mblasio@txattorneys.com
www.txattorneys.com

David George
Texas Bar No. 00793212
THE GEORGE APPELLATE LAW FIRM
440 Louisiana, Suite 900
Houston, Texas 77002
Tel. (832) 850-1113
dgeorge@georgeappeals.com

*Counsel for Real-Party-in-Interest*
*Norman Thomas Barras, Jr.*

## IDENTITY OF PARTIES AND COUNSEL

| Parties | Counsel |
|---|---|
| Relator/Defendant Frank Jackson | Gregg Costa<br>Sydney A. Scott<br>Jack B. DiSorbo<br>Lloyd S. Marshall<br>Kohl V. Anderson<br>GIBSON, DUNN & CRUTCHER LLP<br>811 Main Street, Suite 3000<br>Houston, Texas 77002 |
| Real-Party-in-Interest/ Plaintiff Norman Thomas Barras, Jr.[1] | Anthony G. Buzbee<br>Thomas Colby Holler<br>Mitchell W. Blasio<br>THE BUZBEE LAW FIRM<br>J.P. Morgan Chase Tower<br>600 Travis, Suite 7300<br>Houston, Texas 77002<br><br>David George<br>THE GEORGE APPELLATE LAW FIRM<br>440 Louisiana, Suite 900<br>Houston, Texas 77002 |
| Respondent | Honorable Grant Dorfman<br>Presiding Judge<br>Texas Business Court<br>Eleventh Division<br>301 Fannin Street<br>Houston, Texas 77002 |

---

[1] Incorrectly identified by Jackson as "Norman Thomas Barras, Sr." Jackson Mandamus Pet. at i.

Other Parties
(Co-Defendants)

David Genender
Jordan Kazlow
Ruben C. Garza, III
MCDERMOTT WILL & EMERY
845 Texas Avenue, Suite 4000
Houston, Texas 77002

Maria C. Rodriguez
MCDERMOTT WILL & EMERY
2049 Century Park E., Suite 3200
Los Angeles, California 90067

# TABLE OF CONTENTS

Identity of Parties and Counsel .................................................... iii

Table of Contents ...................................................................... v

Index of Authorities ................................................................. vii

Statement of the Case ............................................................... ix

Issue Presented ........................................................................ ix

Statement of Facts ..................................................................... 1

    Jackson insinuated himself with Reynolds' ultimate owner
    Dorothy Brockman ................................................................. 2

    Reynolds fired Barras ............................................................. 7

    Barras sued Jackson for tortious interference with his
    Reynolds' contract ................................................................. 8

Mandamus Standard .................................................................. 9

Argument ................................................................................ 10

    I.    Standard for Rule 91a motions to dismiss ..................... 11

    II.   Jackson improperly relies on evidence outside of
        Barras' live petition ..................................................... 12

    III. Jackson did not conclusively establish his attorney
        immunity affirmative defense ....................................... 15

        A.   Attorney immunity ............................................... 16

        B.   Jackson did not conclusively establish his
             attorney immunity affirmative defense ................... 21

            1.   Jackson did not conclusively establish that
                all of his challenged conduct was the provision
                of legal services involving the unique office,
                professional skill, training, and authority of
                an attorney ...................................................... 22

            2.   Jackson did not conclusively establish that
                all of his challenged conduct was within an

      adversarial context in which Barras and
      Jackson's client did not share the same
      interests ..........................................................26

   3.   At minimum, Jackson did not conclusively
      establish that attorney immunity applies
      to all of his conduct at issue.............................29

 C.  Whether Barras was properly terminated for
    cause is not at issue in his tortious interference
    claim against Jackson ............................................31

Prayer.................................................................................32

Certificate of Service.........................................................34

Certificate of Compliance...................................................34

# INDEX OF AUTHORITIES

**Cases**

*Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.,*
595 S.W.3d 651 (Tex. 2020) ..................................................... 10-15

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015)..........17-19, 26

*Clements v. Withers*, 437 S.W.2d 818 (Tex. 1969) .......................... 31-32

*Cooper v. Trent*, 551 S.W.3d 325 (Tex. App.—Houston [14th Dist.]
2018, pet. denied)............................................................................12

*Estate of De Chavez*, No. 08-23-00072-CV, 2024 WL 3090531
(Tex. App.—El Paso June 21, 2024, pet. denied)...........................14

*Haynes & Boone v. NFTD, LLC,*
631 S.W.3d 65 (Tex. 2021) ................................ 16-18, 20, 22, 26, 29

*In re Fairway Methanol LLC*, 515 S.W.3d 480 (Tex. App.—
Houston [14th Dist.] 2017, no pet.) ................................................ 9

*In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300 (Tex. 2016)............... 9-10

*In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287 (Tex. 2016) ....................10

*In re Methodist Primary Care Group*, 14-18-00191-CV, 2018 WL
3061321 (Tex. App.—Houston [14th Dist.] June 21, 2018)
(orig. proceeding) (mem. op.) ........................................................10

*Landry's, Inc. v. Animal Legal Def. Fund,*
631 S.W.3d 40 (Tex. 2021) .............................................16-21, 28-29

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,*
991 S.W.2d 787 (Tex. 1999) ...........................................................27

*McMahan v. Greenwood*, 108 S.W.3d 467 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied) ................................................. 27-28

*Mitchell v. Chapman*, 10 S.W.3d 810 (Tex. App.–Dallas 2000, pet.
denied) .........................................................................................17, 26

*Parker v. Ohio Development, LLC*, No. 04-23-00069-CV, 2024 WL 1864756 (Tex. App.—San Antonio Apr. 30, 2024, no pet. h.) (mem. op.) ................................................................................14

*Ron Carter, Inc. v. Kane*, No. 01-10-00815-CV, 2011 WL 5100903 (Tex. App.—Houston [1st Dist.] Oct. 27, 2011, pet. denied) ..... 27-28

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989) ...............31, 32

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ......................17-19, 26, 29

*Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ..............................................27

*Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)................32

*Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018)..........................16, 18-19

## Rules

TEX. R. CIV. P. 65.............................................................................. 13-14

TEX. R. CIV. P. 91a.1............................................................................11

TEX. R. CIV. P. 91a.5(a).......................................................................13

TEX. R. CIV. P. 91a.5(b)..................................................................11, 13

TEX. R. CIV. P. 91a.6.....................................................................11, 13-14

## STATEMENT OF THE CASE

| | |
|---|---|
| **Nature of the Case** | Breach of contract and tortious interference with contract case. Mandamus petition challenging trial court's order denying Texas Rule of Civil Procedure 91a motion to dismiss based on the attorney immunity affirmative defense. |
| **Respondent** | Hon. Grant Dorfman<br>Texas Business Court, Eleventh Division<br>Houston, Texas |
| **Respondent's Actions from which Relator Seeks Relief** | Defendant/Relator Frank Jackson filed a Rule 91a motion to dismiss Plaintiff/Real-Party-in-Interest Norman Thomas Barras, Jr.'s tortious interference claim against him.[2] The trial court denied the motion.[3] Jackson seeks mandamus review of the trial court's order denying his Rule 91a motion to dismiss. |

## ISSUE PRESENTED

The trial court did not clearly abuse its discretion when it denied Jackson's Rule 91a motion to dismiss.

---

[2] MR0130 (Tab 4). "MR__" refers to the page in the Mandamus Record. "(Tab __)" refers to the tab number in the Mandamus Record.

[3] MR0333 (Tab 8).

This Court should deny Jackson's mandamus petition. The trial court did not clearly abuse its discretion when it denied Jackson' Rule 91a motion to dismiss because he did not conclusively establish his attorney-immunity affirmative defense.

## STATEMENT OF FACTS

Barras began working for Reynolds' predecessor company fifty years ago, when he was seventeen years old.[4] Barras originally worked for Universal Computer Systems (now known as Universal Computer Systems Holding, Inc.) ("UCS"). In 2006, UCS bought Reynolds, which was then a publicly traded company.[5] UCS is now Reynolds' parent company.[6] Barras rose through the ranks, becoming Reynolds' Chief Executive Officer and Chairman in 2020.[7] Reynolds is now a multi-billion-dollar leader in the automotive-dealership-technology industry.[8]

---

[4] MR0074 (Tab 3) at ¶ 12. Defendant The Reynolds and Reynolds Company will be referred to as "Reynolds." Defendant Dorothy Brockman will be referred to as "Brockman." Her now-deceased husband Robert "Bob" Brockman will be referred to as "Bob Brockman."

[5] MR0076 (Tab 3) at ¶ 18.

[6] MR0076 (Tab 3) at ¶ 18.

[7] MR0074 (Tab 3) at ¶ 12.

[8] MR0074 (Tab 3) at ¶ 12.

Barras became Reynolds' CEO when its prior CEO Bob Brockman was indicted for tax evasion in 2020.[9] Bob Brockman ultimately passed away in August 2022, while awaiting trial.[10] His wife, Defendant Dorothy Brockman, assumed control of Reynolds' parent company.[11]

**Jackson insinuated himself with Reynolds' ultimate owner Dorothy Brockman**

Jackson served as legal counsel for Bob Brockman during the government's criminal tax-evasion case and also acted as a trustee to the Brockman trust, which controls 99% of Reynolds.[12] Following Bob Brockman's death, Jackson grew closer to Brockman.[13] Jackson began to exert influence over Brockman to the point that she hired him and installed him at Reynold's headquarters in Houston, although Jackson was never employed by Reynolds.[14]

---

[9] MR0076 (Tab 3) at ¶ 20. Throughout the federal government's investigation of Bob Brockman, Reynolds maintained that the allegations pertained to Bob Brockman's personal dealings and that the company itself had no involvement and was not implicated. MR0076 (Tab 3) at ¶ 21.

[10] MR0077 (Tab 3) at ¶ 23.

[11] MR0077 (Tab 3) at ¶ 23.

[12] MR0077 (Tab 3) at ¶ 24.

[13] MR0077 (Tab 3) at ¶ 24.

[14] MR0077 (Tab 3) at ¶ 24.

Despite Barras' quantifiable success in managing Reynolds, disagreements began to arise between Barras and Brockman in October 2024.[15] Many of these "disagreements" were made up from whole cloth.[16] Indeed, in most cases, the minor disputes consisted of repeated efforts by Brockman's newly installed lawyer, Jackson, (and others) to undermine Barras' authority as CEO.[17] At some point, Barras was asked to step down from the Board of UCS—with no rational reason given.[18] He did so without argument.[19] The Board of UCS, under the direction of Jackson and others, continued to undermine Barras' authority despite his measurable success in making Reynolds the most profitable it has ever been.[20]

Barras renewed his written Employment Agreement with Reynolds in January 2024.[21] That renewal was approved by the

---

[15] MR0077 (Tab 3) at ¶ 25.

[16] MR0077 (Tab 3) at ¶ 25.

[17] MR0077 (Tab 3) at ¶ 25.

[18] MR0077 (Tab 3) at ¶ 25.

[19] MR0077 (Tab 3) at ¶ 25.

[20] MR0078 (Tab 3) at ¶ 26.

[21] MR0078 (Tab 3) at ¶ 28; MR0091-MR0110 (Tab 3) (Employment Agreement).

Board.[22] The Employment Agreement has a ten-year term and provides yearly compensation that potentially exceeds $30 million annually, due to base compensation and bonuses.[23] The Employment Agreement guarantees this compensation package for the full ten-year term, unless Barras is terminated "for cause."[24]

By 2025, Jackson had immersed himself in all details of Reynolds' business, even though he had no position in Reynolds.[25] His role by this point had little to nothing to do with providing legal advice.[26] It was clear that he was the eyes and ears of Brockman, and she intended to find a way to push Barras out and likely install Jackson in Barras' place.[27] Such a move would personally benefit Brockman in her individual capacity and would also be a windfall to Jackson.[28]

---

[22] MR0078 (Tab 3) at ¶ 28.

[23] MR0078 (Tab 3) at ¶ 28; MR0093-MR0099 (Tab 3).

[24] MR0078 (Tab 3) at ¶ 28; MR0094-MR0099 (Tab 3).

[25] MR0078 (Tab 3) at ¶ 29. To be clear: Jackson was never Reynolds' general counsel. He was the general counsel for UCS, Reynolds' corporate parent. MR0134 (Tab 4); MR0135 (Tab 4); MR0176 (Tab 6); MR0180 (Tab 6).

[26] MR0078 (Tab 3) at ¶ 29.

[27] MR0078 (Tab 3) at ¶ 29.

[28] MR0078 (Tab 3) at ¶ 29.

Both Jackson and Brockman described Jackson's work regarding Reynolds as being done in capacities other than as a lawyer.[29] Jackson told Barras that he was handling the changes to the UCS and Reynolds boards in his "capacity as Director of Spanish Step, the majority shareholder of UCS."[30] Dorothy Brockman described Jackson as "the trustee for the Management Trust" and stated that Jackson "works for me."[31]

Jackson inserted himself into areas of Reynolds' operations far removed from legal issues.[32] Jackson gave Barras instructions regarding changes to the Reynolds and UCS boards.[33] In response to Jackson saying this, Barras responded that he did not need Jackson's involvement because his staff was able to handle changes on their own.[34] Jackson responded by emphasizing that Brockman had asked him to be involved with the board changes.[35]

---

[29] MR0079 (Tab 3) at ¶ 30.

[30] MR0079 (Tab 3) at ¶ 30.

[31] MR0079 (Tab 3) at ¶ 30.

[32] MR0079 (Tab 3) at ¶ 31.

[33] MR0079 (Tab 3) at ¶ 31.

[34] MR0079 (Tab 3) at ¶ 31.

[35] MR0079 (Tab 3) at ¶ 31.

Jackson was regularly involved in Reynolds activities that were outside attorney-specific duties:

- In December 2024, Jackson and Brockman met with numerous Reynolds employees on issues involving technology, operations, and product management.

- In April 2025, Brockman directed that Jackson "be in all strategic type meetings" of Reynolds.

- In April 2025, Jackson was involved in meetings regarding why Reynolds was having difficulty getting business from publicly traded auto dealerships.

- In April 2025, Jackson was working with Brockman on Reynolds' "strategy/goals/ direction/etc…"[36]

In his actions regarding Reynolds and Barras, Jackson was not acting on behalf of his clients in the uniquely lawyerly capacity of one who possesses the office, professional training, skill, and authority of an attorney.[37] Instead, these are actions of a general business advisor who happened to have a law license.[38] Jackson's involvement in Reynolds' general business activities was so extensive that in October 2024, Barras emailed Reynolds' then-

---

[36] MR0079 (Tab 3) at ¶ 32.

[37] MR0079 (Tab 3) at ¶ 33.

[38] MR0079 (Tab 3) at ¶ 33; MR0082 (Tab 3) at ¶ 48.

general counsel Richard Rauch, saying "Guess we work for Frank now," referring to Frank Jackson.[39]

**Reynolds fired Barras**

On May 19, 2025, after Barras returned from lunch, Reynolds' security escorted him from his office and told him he was fired.[40] No reason was given at the time.[41] Despite his fifty years of service, Barras was treated like a common criminal.[42] Reynolds later gave Barras a termination letter that stated his employment with Reynolds was being terminated "for cause," resulting from a business transaction from 2021 that was part of an overall transaction engineered by Bob Brockman beginning sometime before.[43] None of the details of the trumped-up cause termination are true, and the stated reasons for Barras' termination do not even begin to approach the "cause" required by the Employment Agreement terms.[44]

---

[39] MR0080 (Tab 3) at ¶ 334 MR0082 (Tab 3) at ¶ 48.

[40] MR0080 (Tab 3) at ¶ 35.

[41] MR0080 (Tab 3) at ¶ 35.

[42] MR0080 (Tab 3) at ¶ 35.

[43] MR0080 (Tab 3) at ¶ 35.

[44] MR0080 (Tab 3) at ¶ 35.

Jackson—along with Brockman—intentionally and knowingly interfered with Barras' Employment Agreement with Reynolds.[45] The purpose of the interference was motivated by animus towards Barras.[46] Jackson acted in his own interests, contrary to the interests of Plaintiff and Reynolds.[47] As a direct and proximate result of Brockman and Jackson's intentional actions, Barras was wrongfully terminated from his position as Chairman and CEO of Reynolds.[48]

**Barras sued Jackson for tortious interference with his Reynolds' contract**

Barras sued Reynolds, Brockman, and Jackson in May 2025 in Harris County District Court.[49] Barras sued Reynolds for breach of contract and sued Brockman and Jackson for tortious interference.[50] Barras is also seeking a declaratory judgment that

---

[45] MR0082 (Tab 3) at ¶ 47.

[46] MR0082 (Tab 3) at ¶ 47.

[47] MR0082 (Tab 3) at ¶ 47.

[48] MR0082 (Tab 3) at ¶ 44.

[49] MR0002 (Tab 1).

[50] MR0009-MR0010 (Tab 1) at ¶¶ 34-42; MR0024-MR0025 (Tab 2) at ¶¶ 35-43; MR0081-MR0082 (Tab 3) at ¶¶ 40-49.

he did not breach his Employment Agreement.[51] Reynolds, Brockman, and Jackson removed this lawsuit to the Texas Business Court in June 2025.[52]

Jackson filed a Rule 91a motion to dismiss Barras' tortious interference claim against him.[53] In response to that motion, Barras amended his pleadings, filing his Second Amended Petition.[54] Jackson chose not to amend his Rule 91a motion in response to Barras' amended petition. The trial court denied Jackson's Rule 91a motion.[55]

## MANDAMUS STANDARD

Mandamus is an extraordinary remedy granted only when the relator shows that the trial court clearly abused its discretion and that no adequate appellate remedy exists.[56] A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as

---

[51] MR0083-MR0086 (Tab 3) at ¶¶ 50-62.

[52] MR0780 (Tab. 31).

[53] MR0130 (Tab 4).

[54] MR0072 (Tab 3); MR0148 (Tab 5).

[55] MR0334 (Tab 8).

[56] *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302 (Tex. 2016); *In re Fairway Methanol LLC*, 515 S.W.3d 480, 486–87 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts.[57]

The Supreme Court has emphasized that "mandamus review is not—and should not be—an easily wielded tool."[58] To be entitled to mandamus relief, the relator "must establish that the trial court could have reasonably reached only one conclusion."[59]

## ARGUMENT

Jackson's Rule 91a motion did not conclusively establish his attorney-immunity affirmative defense.[60] So the trial court did not clearly abuse its discretion when it denied Jackson's Rule 91a motion to dismiss. This Court, therefore, should deny Jackson's mandamus petition.

Because Barras amended his tortious-interference cause of action a week before the hearing when he filed his Second Amended

---

[57] *In re Methodist Primary Care Group*, 14-18-00191-CV, 2018 WL 3061321, at *3 (Tex. App.—Houston [14th Dist.] June 21, 2018) (orig. proceeding) (mem. op.).

[58] *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 299 (Tex. 2016).

[59] *In re H.E.B. Grocery*, 492 S.W.3d at 302.

[60] *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020).

Petition, this Court will base its review on that petition.[61]

## I.    Standard for Rule 91a motions to dismiss

Texas Rule of Civil Procedure 91a provides that a party "may move to dismiss a cause of action on the grounds that it has no basis in law or fact."[62] "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."[63] "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded."[64]

In ruling on a Rule 91a motion, a court "may not consider evidence ... and must decide the motion based solely on the pleading of the cause of action."[65] The Texas Supreme Court, therefore, has held that Rule 91a "limits a court's factual inquiry to the plaintiff's pleadings."[66]

---

[61] CR0072 (Tab 3); TEX. R. CIV. P. 91a.5(b) ("In ruling on the motion, the court must not consider a nonsuit or amendment not filed as permitted by paragraphs (a) or (b)."); *see* § II below.

[62] TEX. R. CIV. P. 91a.1.

[63] *Id.*

[64] *Id.*

[65] TEX. R. CIV. P. 91a.6; *Bethel*, 595 S.W.3d at 654.

[66] *Bethel*, 595 S.W.3d at 656.

"Attorney immunity is an affirmative defense."[67] A Rule 91a motion to dismiss based on an affirmative defense can be granted only if the affirmative defense can "be conclusively established by the facts in a plaintiff's petition."[68] If an affirmative defense cannot "be conclusively established by the facts in a plaintiff's petition" it is "not a proper basis for a motion to dismiss."[69]

A court deciding a Rule 91a motion must "construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings."[70]

## II. Jackson improperly relies on evidence outside of Barras' live petition

Jackson improperly bases much of his argument on evidence from Barras' First Amended Petition, which was superseded by his live Second Amended Petition.[71] This Court should ignore Jackson's arguments based on this improper evidence that the Texas Rules of Civil Procedure exclude from consideration when deciding Rule 91a

---

[67] *Id.* at 654.

[68] *Id.*

[69] *Id.*

[70] *Cooper v. Trent*, 551 S.W.3d 325, 329 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

[71] Jackson Mandamus Pet. at 18-23 (§ II(B)).

motions to dismiss.

In ruling on a Rule 91a motion, a court "must decide the motion based solely on the pleading of the cause of action."[72] The Texas Supreme Court, therefore, has held that Rule 91a "limits a court's factual inquiry to the plaintiff's pleadings."[73]

When faced with a Rule 91a motion, a plaintiff may file an amended petition at least three days before the hearing.[74] That new petition becomes the live petition that the trial court considers when ruling on the Rule 91a motion.[75] That is what Barras did, so Barras' Second Amended Petition is the live petition for the Rule 91a motion.[76]

Texas Rule of Civil Procedure 65 provides that when a pleading has been amended, the prior pleading that was amended "shall no longer be regarded as a part of the pleading in the record

---

[72] TEX. R. CIV. P. 91a.6; *Bethel*, 595 S.W.3d at 654.

[73] *Bethel*, 595 S.W.3d at 656.

[74] TEX. R. CIV. P. 91a.5(a).

[75] TEX. R. CIV. P. 65; TEX. R. CIV. P. 91a.5(a). When, like here, a plaintiff amends in response to a Rule 91a motion, the defendant can withdraw its motion, file an amended motion (resetting deadlines), or stand on its original motion. TEX. R. CIV. P. 91a.5(b). Jackson did not file an amended Rule 91a motion and, instead, stood on his original motion.

[76] MR0072 (Tab 3); MR0148-MR0149 (Tab 5).

of the cause."[77] Therefore, after Barras filed his Second Amended Petition, his First Amended Petition ceased to be "a part of the pleading in the record of the cause."[78] So Barras' First Amended Petition could not be considered when deciding Jackson's Rule 91a motion because it was no longer a "pleading of the cause of action."[79] The prohibition applies equally to this Court.[80]

Much of Jackson's argument is based on what Barras alleged in his First Amended Petition versus in his live Second Amended Petition. Jackson devotes five pages of his seventeen-page

---

[77] TEX. R. CIV. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause, unless some error of the court in deciding upon the necessity of the amendment, or otherwise in superseding it, be complained of, and exception be taken to the action of the court, or unless it be necessary to look to the superseded pleading upon a question of limitation.").

[78] *Id.*; MR0072 (Tab 3) (Barras' Second Amended Petition).

[79] TEX. R. CIV. P. 91a.6; *Estate of De Chavez*, No. 08-23-00072-CV, 2024 WL 3090531, at *5 (Tex. App.—El Paso June 21, 2024, pet. denied). There is an exception that allows the trial court to consider documents attached to the petition under Texas Rule of Civil Procedure 59. TEX. R. CIV. P. 91a.6. There is also an exception that allows the trial court to consider other pleadings in the case, but only "if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court." *Bethel*, 595 S.W.3d at 656. That does not apply here because Jackson is attempting to use statements in Barras' earlier, superseded First Amended Petition as part of the "court's factual inquiry."

[80] *Estate of De Chavez*, 2024 WL 3090531, at *5; *Parker v. Ohio Development, LLC*, No. 04-23-00069-CV, 2024 WL 1864756, at *3 (Tex. App.—San Antonio Apr. 30, 2024, no pet. h.) (mem. op.).

14

argument to the fact Barras made new allegations in his Second Amended Petition in response to Jackson's Rule 91a motion.[81] This Court should ignore Jackson's arguments based on facts alleged in Barras' now superseded First Amended Petition.

## III. Jackson did not conclusively establish his attorney immunity affirmative defense

The trial court did not abuse its discretion—let alone clearly abuse its discretion—when it denied Jackson's Rule 91a motion because he had not "conclusively established" his attorney-immunity affirmative defense.[82] Because Jackson's affirmative defense was not conclusively established, it is "not a proper basis for a motion to dismiss."[83] This Court should, therefore, deny Jackson's Rule 91a motion to dismiss based on attorney immunity.

Jackson ignores his heavy burden. He does not even recognize that a Rule 91a motion to dismiss based on an affirmative defense can be granted only if the affirmative defense is conclusively established.[84] And Jackson does not show that he conclusively

---

[81] Jackson Mandamus Pet. at 18-23 (§ II(B)).

[82] *Bethel*, 595 S.W.3d at 654.

[83] *Id.*

[84] *Id.*

15

established his attorney immunity affirmative defense. This Court, therefore, should deny Jackson's mandamus petition.

## A. Attorney immunity

Lawyers do not have immunity for every action they take on behalf of a client. The Texas Supreme Court has made clear that "[s]ome conduct by attorneys remains actionable 'even if done on behalf of a client.'"[85] Attorney immunity has traditionally been understood in the context of litigation. It was only in 2021 that the Supreme Court recognized that attorney immunity could apply outside of litigation.[86]

The attorney-immunity affirmative defense "applies to lawyerly work in 'all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client' but only when the claim against the attorney is based on 'the kind of conduct' attorneys undertake while discharging their professional duties to

---

[85] *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 52 (Tex. 2021) (quoting *Youngkin v. Hines*, 546 S.W.3d 675, 683 (Tex. 2018)).

[86] *Haynes & Boone v. NFTD, LLC*, 631 S.W.3d 65, 79 (Tex. 2021) ("Today we confirm that attorney immunity applies to claims based on conduct outside the litigation context, so long as the conduct is the 'kind' of conduct we have described above.").

16

a client."[87] The attorney-immunity defense is intended to ensure "loyal, faithful, and aggressive representation by attorneys employed as advocates."[88] So "if an attorney engages in conduct that is not 'lawyerly work' or is 'entirely foreign to the duties of a lawyer' or falls outside the scope of client representation, the attorney-immunity defense does not apply.[89]

The Texas Supreme Court has held that attorney immunity is decided on a conduct-by-conduct basis.[90] So an attorney might have immunity for some actions during the representation, but not others.[91]

"In determining whether conduct is 'the kind' immunity protects, the inquiry focuses on the *type* of conduct at issue rather than the alleged wrongfulness of that conduct."[92] The Supreme

---

[87] *Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022) (quoting *Haynes & Boone*, 631 S.W.3d at 79).

[88] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.–Dallas 2000, pet. denied) Mitchell).

[89] *Taylor*, 644 S.W.3d at 646 (quoting *Landry's*, 631 S.W.3d at 51-53).

[90] *Landry's, Inc.*, 631 S.W.3d at 51-52.

[91] *Id.*

[92] *Taylor*, 644 S.W.3d at 646 (quoting *Landry's*, 631 S.W.3d at 47).

17

Court has emphasized that when deciding if an attorney's conduct was "'the kind of conduct' attorneys undertake while discharging their professional duties to a client" the question is not if this is an activity an attorney regularly perform on client's behalf.[93] Instead, the attorney's "conduct must involve 'the uniquely lawyerly *capacity*" and the attorney" *skills as an attorney.*'"[94] "Immunity attaches only if the attorney is discharging 'lawyerly' duties," but an attorney has no immunity for actions that could have been performed by non-lawyers.[95]

The Supreme Court has held that there is no immunity for conduct that is "foreign to the duties of a lawyer."[96] But it made clear that the term "foreign to the duties of a lawyer" "does not mean something a good attorney should not do."[97] Instead, it means that the attorney is acting outside their capacity and function as an

---

[93] *Id.* 646 (quoting *Haynes & Boone, LLP*, 631 S.W.3d 65, 79 (Tex. 2021)).

[94] *Id.* (quoting *Landry's*, 631 S.W.3d at 51-53) (emphasis in original in *Taylor*).

[95] *Id.*

[96] *Youngkin*, 546 S.W.3d at 684; *Taylor*, 644 S.W.3d at 648.

[97] *Taylor*, 644 S.W.3d at 646 (citing *Youngkin*, 546 S.W.3d at 681; *Cantey Hanger*, 467 S.W.3d at 482, 487).

18

attorney.[98] So "a lawyer who makes publicity statements to the press and on social media on a client's behalf" is engaging in conduct "foreign to the duties of a lawyer"—meaning there is no immunity—even though there is nothing inherently improper in an attorney making publicity statements on a client's behalf.[99]

In *Landry's Inc. v. Animal Legal Defense Fund*, the Texas Supreme Court held that "attorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'"[100] In that case, Landry's sued lawyers who had threatened to sue it regarding treatment of the white tigers at the Houston Aquarium.[101] The lawyers had sent statutory notice letters to Landry's detailing the allegations, as required by the federal environmental laws they were suing under.[102] The lawyers also made statements to the press and on social media regarding their

---

[98] *Taylor*, 644 S.W.3d at 646; *Youngkin*, 546 S.W.3d at 681; *Cantey Hanger*, 467 S.W.3d at 482, 487.

[99] *Taylor*, 644 S.W.3d at 646.

[100] *Landry's, Inc.*, 631 S.W.3d at 47.

[101] *Id.* at 45.

[102] *Id.*

allegations against Landry's.[103] The Supreme Court held that while attorney immunity applied to the statutory notice letter, it did not apply to the lawyers' statements to the press and on social media.[104] It held that immunity did not apply because an "'attorney who repeats his client's allegations to the media or the public for publicity purposes is not acting in the unique, lawyerly capacity to which Texas law affords the strong protection of immunity.'"[105]

The Supreme Court recognized that the lawyers' statements to the press and on social media were made in the course of their representation of their clients.[106] The Supreme Court also recognized that the lawyers made these statements to the press and on social media in an effort to further their clients' legal cases.[107] Despite this, the Supreme Court held that the lawyers' statements to the press and on social media were not entitled to attorney

---

[103] *Id.* at 52.

[104] *Id.*

[105] *Haynes & Boone, LLP*, 631 S.W.3d at 77–78 (quoting *Landry's, Inc.*, 631 S.W.3d at 44).

[106] *Landry's, Inc.*, 631 S.W.3d at 52.

[107] *Id.*

immunity.[108] It held that attorney immunity did not apply because "[t]here is nothing particular to the office, professional training, skill, and authority of an attorney about sending out press releases or disseminating potentially defamatory allegations through the media."[109]

The Supreme Court emphasized the fact that "[a]nyone—including press agents, spokespersons, or someone with no particular training or authority at all—can publicize a client's allegations to the media."[33] Immunity attaches only if the attorney is discharging "lawyerly" duties to his client.[34]

**B.    Jackson did not conclusively establish his attorney immunity affirmative defense based solely on Barras'**

The trial court correctly denied Jackson's Rule 91a motion to dismiss Barras' claims based on his attorney-immunity affirmative defense because:

- Jackson did not conclusively establish that all of his challenged conduct was the provision of legal services involving the unique office, professional skill, training, and authority of an attorney; and

---

[108] *Id.*

[109] *Id.* (internal quotation omitted).

21

- Jackson did not conclusively establish that all of his challenged conduct was within an adversarial context in which Barras and Jackson's client did not share the same interests

Each of these provides an independent ground to deny Jackson's motion to dismiss. Jackson's failure to conclusively establish either ground is fatal to his attorney-immunity affirmative defense.[110] Jackson failed to establish even one ground.

### 1. Jackson did not conclusively establish that all of his challenged conduct was the provision of legal services involving the unique office, professional skill, training, and authority of an attorney

Jackson has not conclusively established that all of the conduct he is sued for "constitute[d] the provision of 'legal' services involving the unique office, professional skill, training, *and* authority of an attorney," as opposed to conduct that—while it may properly be performed by an attorney—could also be performed by non-lawyers.[111] That alone is fatal to his contention that Barras' claim against him should be dismissed at the pleading stage based

---

[110] *Haynes & Boone*, 631 S.W.3d at 81 (as the Supreme Court's use of "*and*" in italics makes clear, the requirement is in the conjunctive, so both elements must be met for attorney immunity to apply).

[111] *Id.* (emphasis in original).

22

on his attorney-immunity affirmative defense. This Court can deny Jackson's mandamus petition on that basis alone.

Barras' Second Amended Petition alleges facts showing that Jackson's conduct at issue in this case had little to nothing to do with providing legal advice.[112] Instead, these are actions of a general business advisor who happened to have a law license.[113] Jackson, therefore, cannot conclusively establish his attorney-immunity affirmative defense.

By 2025, Jackson had immersed himself in all details of Reynolds's business, even though he held no position with Reynolds.[114] His role by this point had little to nothing to do with providing legal advice.[115] Both Jackson and Brockman described Jackson's work regarding Reynolds as being done in capacities other than as a lawyer.[116] Jackson told Barras that he was handling the changes to the UCS and Reynolds boards in his "capacity as

---

[112] MR0078 (Tab 3) at ¶ 29.

[113] MR0079 (Tab 3) at ¶ 33; MR0082 (Tab 3) at 48.

[114] MR0078 (Tab 3) at ¶ 29.

[115] MR0078 (Tab 3) at ¶ 29.

[116] MR0079 (Tab 3) at ¶ 30.

23

Director of Spanish Step, the majority shareholder of UCS."[117]

Brockman described Jackson as "the trustee for the Management Trust" and stated that Jackson "works for me."[118]

Jackson inserted himself into areas of Reynolds' operations far removed from legal issues.[119] Jackson gave Barras instructions regarding changes to the Reynolds and UCS boards.[120] In response to Jackson saying this, Barras responded that he did not need Jackson's involvement because his staff was able to handle changes on their own.[121] Jackson responded by emphasizing that Brockman had asked him to be involved with the board changes.[122]

Jackson was regularly involved in Reynolds activities that were outside attorney-specific duties:

- In December 2024, Jackson and Brockman met with numerous Reynolds employees on issues involving technology, operations, and product management.

---

[117] MR0079 (Tab 3) at ¶ 30.

[118] MR0079 (Tab 3) at ¶ 30.

[119] MR0079 (Tab 3) at ¶ 31.

[120] MR0079 (Tab 3) at ¶ 31.

[121] MR0079 (Tab 3) at ¶ 31.

[122] MR0079 (Tab 3) at ¶ 31.

- In April 2025, Brockman directed that Jackson "be in all strategic type meetings" of Reynolds.

- In April 2025, Jackson was involved in meetings regarding why Reynolds was having difficulty getting business from publicly traded auto dealerships.[123]

- In April 2025, Jackson was working with Brockman on Reynolds' "strategy/goals/direction/etc…"[124]

Jackson's involvement in Reynolds' general business activities was so extensive that in October 2024, Barras emailed Reynolds' then-general counsel Richard Rauch, saying "Guess we work for Frank now," referring to Frank Jackson.[125]

Jackson did not conclusively establish that he was acting on behalf of his clients in the uniquely lawyerly capacity of one who possesses the office, professional training, skill, and authority of an attorney.[126] Instead, these are actions of a general business advisor who happened to have a law license.[127] The trial court, therefore, did not clearly abuse its discretion when it denied Jackson's Rule

---

[123] MR0079 (Tab 3) at ¶ 32.

[124] MR0079 (Tab 3) at ¶ 32.

[125] MR0080 (Tab 3) at ¶ 34; MR0082 (Tab 3) at 48.

[126] MR0079 (Tab 3) at ¶ 33; MR0130 (Tab 4); MR0175 (Tab 5).

[127] MR0079 (Tab 3) at ¶ 33; MR0082 (Tab 3) at 48.

91a motion based on his attorney-immunity affirmative defense.

## 2. Jackson did not conclusively establish that all of his challenged conduct was within an adversarial context in which Barras and Jackson's client did not share the same interests

The attorney-immunity affirmative defense is intended to ensure "loyal, faithful, and aggressive representation by attorneys employed as advocates."[128] While attorney immunity can apply outside of litigation, it applies only "to lawyerly work" in "adversarial contexts."[129] Jackson did not conclusively establish that the conduct he is sued for involved "representing the client within an adversarial context in which the client and the non-client do not share the same interests."[130] Instead, most of Jackson's conduct was in the context of a company owner's representative interacting with the company's CEO.[131] That is not an adversarial context.

The Texas Supreme Court has held that whether a

---

[128] *Cantey Hanger, LLP*, 467 S.W.3d at 481 (quoting *Mitchell*, 10 S.W.3d at 812).

[129] *Taylor*, 644 S.W.3d at 646; *Haynes & Boone*, 631 S.W.3d at 79.

[130] *Haynes & Boone*, 631 S.W.3d at 81.

[131] MR0074-MR0081 (Tab 3) at ¶¶ 12-39.

relationship is "adversarial" or "nonadversarial" is determined by "the extent to which the interests of the client and the third party are consistent with each other."[132] This test "is not categorical, but fact-specific."[133] A business negotiation that involves "an arms-length transaction in which both sides were represented and advised by their own counsel" is an adversarial context.[134] But people working together in a business who do not have ongoing "grievances" and "hostilities" do not have an adversarial relationship.[135] So when the parties "were ostensibly working towards the same goal of a successful business venture," whether their relationship was adversarial is "not established as a matter of

[132] *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999); *McMahan v. Greenwood*, 108 S.W.3d 467, 497 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("not every situation outside of litigation is clearly defined as adversarial or nonadversarial, and consequently, we examine the extent to which the interests of the client and the third party are consistent with one another").

[133] *Ron Carter, Inc. v. Kane*, No. 01-10-00815-CV, 2011 WL 5100903, at *5 (Tex. App.—Houston [1st Dist.] Oct. 27, 2011, pet. denied).

[134] *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 636 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[135] *Id.* ("Admittedly, the parties later set aside their grievances, at least temporarily until the distribution of settlement proceeds prompted a renewal of hostilities. However, at the time the Settlement Agreement was drafted, the parties' relationship was adversarial. Therefore, appellant was not justified in relying on statements made by opposing counsel during that time period.").

law but would be a fact question."[136]

Barras was CEO of Reynolds, of which Brockman was the ultimate primary owner. Jackson was Brockman's business advisor and the general counsel of Reynolds' parent company. So Barras and Jackson were "ostensibly working towards the same goal of a successful business venture."[137] Jackson, therefore, has not conclusively established that he and Barras had an adversarial relationship regarding *all* allegations against him.[138] Jackson does not discharge his requirement by identifying an adversarial relationship regarding some actions. Instead, Jackson must conclusively establish an adversarial relationship regarding all of his actions at issue in Barras' tortious interference claim against him.[139]

The trial court, therefore, did not clearly abuse its discretion when it denied Jackson's Rule 91a motion based on his attorney-

---

[136] *Ron Carter, Inc. v. Kane*, 2011 WL 5100903, at \*6; *see also McMahan*, 108 S.W.3d at 497.

[137] *Ron Carter*, 2011 WL 5100903, at \*6; *see also McMahan*, 108 S.W.3d at 497.

[138] *Ron Carter*, 2011 WL 5100903, at \*6; *see also McMahan*, 108 S.W.3d at 497.

[139] *Landry's, Inc.*, 631 S.W.3d at 52.

immunity affirmative defense because Jackson did not conclusively establish that all of his alleged conduct was "lawyerly work" in "adversarial contexts."[140]

### 3. At minimum, Jackson did not conclusively establish that attorney immunity applies to all of his conduct at issue

The Texas Supreme Court has held that attorney immunity is decided on a conduct-by-conduct basis.[141] So an attorney might have immunity for some actions during the representation, but not others.[142] Jackson has not met his heavy burden of conclusively establishing that attorney immunity applies to all of the actions for which Barras is suing him.

Even if this Court were to determine that some of Jackson's actions were entitled to attorney immunity, it should not grant mandamus ordering the trial court to grant the Rule 91a motion in its entirety. Instead, it should limit any order to only those actions that Jackson conclusively established were barred by attorney immunity.

---

[140] *Taylor*, 644 S.W.3d at 646; *Haynes & Boone*, 631 S.W.3d at 79.

[141] *Landry's, Inc.*, 631 S.W.3d at 51-52.

[142] *Id.*

As explained above, Jackson did not conclusively establish his attorney immunity affirmative defense regarding any of his actions at issue. So this Court should deny Jackson's mandamus petition in its entirety. But if this Court were to determine that Jackson met his burden as to some—but not all—of his actions, that does not bar Barras' claim in its entirety.

For example, even if this Court were to hold that Jackson had attorney immunity for advice he gave Reynolds regarding whether to fire Barras, Barras' tortious interference claim would still remain. As Barras explains below, the issue of whether he was properly fired for cause—while relevant to his breach of contract claim against Reynolds—is irrelevant to his tortious interference claim against Jackson.[143] Barras is not suing Jackson because of the advice he gave to Reynolds' regarding whether it had cause to fire him. Instead, Barras is suing Jackson because he—together with Brockman—interfered with his contract as Reynolds' CEO.[144]

---

[143] *See* § III(B) below.

[144] MR0078 (Tab 3) at ¶ 29; MR0082 (Tab 3) at ¶ 47.

## C. Whether Barras was properly terminated for cause is not at issue in his tortious interference claim against Jackson

Jackson bases his mandamus petition on his allegation that Barras' tortious interference claim is really a challenge to the legal advice he gave his client.[145] Jackson contends that Barras' tortious interference claim is based on "whether the investigation" that Jackson conducted "supports for-cause termination" of Barras' employment as CEO.[146]

Jackson is wrong. Whether Barras was fired for cause is irrelevant to his tortious interference claim against Jackson.

Tortious interference is not legal when a contracting party has the right to terminate the contract. The Texas Supreme Court has long held that "the unenforceability of the contract is no defense to an action for tortious interference with its performance."[147] So "third persons are not free to interfere tortiously with performance of the contract before it is avoided."[148] That is why the Supreme

---

[145] Jackson Mandamus Pet. at 22.

[146] *Id.*

[147] *Clements v. Withers*, 437 S.W.2d 818, 821 (Tex. 1969).

[148] *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 688 (Tex. 1989).

31

Court has long recognized that "a cause of action exists for tortious interference with a contract of employment terminable at will."[149]

Barras is suing Jackson for tortiously interfering with his contract with Reynolds.[150] Whether Reynolds properly fired Barras for cause will be determined in Barras' breach of contract and declaratory judgment claims against Reynolds.[151] Whether Reynolds properly fired Barras for cause will not be an issue in Barras' tortious interference claim against Jackson.

This Court, therefore, should reject Jackson's argument that whether Barras was properly fired for cause is part of Barras' tortious interference claim.

## PRAYER

The trial court did not clearly abuse its discretion when it denied Jackson' Rule 91a motion to dismiss because Jackson did not

---

[149] *Id.* The only exception to this rule is if the contract is unenforceable on public policy grounds, such as illegality or unreasonable restraint of trade. *Clements*, 437 S.W.2d at 821; *Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 771 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). That is not at issue regarding Barras' contract with Reynolds. MR0091-MR0110 (Tab 3).

[150] MR0082 (Tab 3) (tortious interference).

[151] MR0081-MR0082 (Tab 3) (breach of contract); MR0082-MR0086 (declaratory judgment).

conclusively establish his attorney-immunity affirmative defense. This Court, therefore, should deny Jackson's mandamus petition in its entirety.

If this Court determines that Jackson has conclusively established his attorney-immunity affirmative defense regarding some—but not all—of the actions for which he is being sued, it should limit its mandamus relief to those actions where the affirmative defense was conclusively-established.

Respectfully submitted,

<table>
<tr><td></td><td>/s/ David George</td></tr>
<tr><td>Anthony G. Buzbee</td><td>David George</td></tr>
<tr><td>Texas Bar No. 24001820</td><td>Texas Bar No. 00793212</td></tr>
<tr><td>Thomas Colby Holler</td><td>THE GEORGE APPELLATE LAW FIRM</td></tr>
<tr><td>Texas Bar No. 24126898</td><td>440 Louisiana, Suite 900</td></tr>
<tr><td>Mitchell W. Blasio</td><td>Houston, Texas 77002</td></tr>
<tr><td>Texas Bar No. 24138469</td><td>Tel. (832) 850-1113</td></tr>
<tr><td>THE BUZBEE LAW FIRM</td><td>dgeorge@georgeappeals.com</td></tr>
<tr><td>J.P. Morgan Chase Tower</td><td></td></tr>
<tr><td>600 Travis, Suite 7300</td><td></td></tr>
<tr><td>Houston, Texas 77002</td><td></td></tr>
<tr><td>Tel. (713) 223-5393</td><td></td></tr>
<tr><td>tbuzbee@txattorneys.com</td><td></td></tr>
<tr><td>choller@txattorneys.com</td><td></td></tr>
<tr><td>mblasio@txattorneys.com</td><td></td></tr>
<tr><td>www.txattorneys.com</td><td></td></tr>
</table>

*Counsel for Real-Party-in-Interest*
*Norman Thomas Barras, Jr.*

## CERTIFICATE OF SERVICE

I certify that on January 4, 2026, I served a copy of the foregoing document upon the following counsel of record via electronic filing:

Gregg Costa
Sydney A. Scott
Jack B. DiSorbo
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
*Counsel for Defendant/Relator Frank Jackson*

Honorable Grant Dorfman
Presiding Judge
Texas Business Court
Eleventh Division
301 Fannin Street
Houston, Texas 77002
*Respondent*

*/s/ David George*
David George

## CERTIFICATE OF COMPLIANCE

This mandamus response contains 6,104 words, excluding the caption, signature blocks, and certificates. This motion was prepared using Microsoft Word for Mac version 16.90.22016 in 14 point (12 point in footnotes) Century Schoolbook (Arial headings) font.

*/s/ David George*
David George

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David George on behalf of David George
Bar No. 793212
6226d830-c50e-4ea2-8bb1-c71ad4164354@us.efiling.clio.com
Envelope ID: 109627216
Filing Code Description: Original Proceeding Response
Filing Description: Real Party in Interest Norman Barras Response to Mandamus Petition
Status as of 1/5/2026 7:06 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David George | | dgeorge@georgeappeals.com | 1/4/2026 12:13:42 PM | SENT |

Associated Case Party: The Reynolds and Reynolds Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jordan Kazlow | 24101994 | jkazlow@mwe.com | 1/4/2026 12:13:42 PM | SENT |
| Ruben Garza | 24127735 | rgarza@mwe.com | 1/4/2026 12:13:42 PM | SENT |
| David Genender | | dgenender@mwe.com | 1/4/2026 12:13:42 PM | SENT |
| Maria C.Rodriguez | | mcrodriguez@mwe.com | 1/4/2026 12:13:42 PM | SENT |

Associated Case Party: Dorothy Brockman

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jordan Kazlow | 24101994 | jkazlow@mwe.com | 1/4/2026 12:13:42 PM | SENT |
| Ruben Garza | 24127735 | rgarza@mwe.com | 1/4/2026 12:13:42 PM | SENT |
| Maria C.Rodriguez | | mcrodriguez@mwe.com | 1/4/2026 12:13:42 PM | SENT |
| David Genender | | dgenender@mwe.com | 1/4/2026 12:13:42 PM | SENT |

Associated Case Party: NormanThomasBarras, Jr.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Anthony Buzbee | 24001820 | tbuzbee@txattorneys.com | 1/4/2026 12:13:42 PM | SENT |
| Thomas Holler | 24126898 | choller@txattorneys.com | 1/4/2026 12:13:42 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David George on behalf of David George
Bar No. 793212
6226d830-c50e-4ea2-8bb1-c71ad4164354@us.efiling.clio.com
Envelope ID: 109627216
Filing Code Description: Original Proceeding Response
Filing Description: Real Party in Interest Norman Barras Response to Mandamus Petition
Status as of 1/5/2026 7:06 AM CST

Associated Case Party: NormanThomasBarras, Jr.

| Thomas Holler | 24126898 | choller@txattorneys.com | 1/4/2026 12:13:42 PM | SENT |
| Mitchell Blasio | 24138469 | mblasio@txattorneys.com | 1/4/2026 12:13:42 PM | SENT |

Associated Case Party: Frank Jackson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sydney Scott | | SAScott@gibsondunn.com | 1/4/2026 12:13:42 PM | SENT |
| Jack DiSorbo | | JDiSorbo@gibsondunn.com | 1/4/2026 12:13:42 PM | SENT |
| TX-MAO TX-MAO | | pacer-tx@gibsondunn.com | 1/4/2026 12:13:42 PM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/4/2026 12:13:42 PM | SENT |

Associated Case Party: Honorable Grant Dorfman

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Honorable Grant Dorfman | | BCDivision11B@txcourts.gov | 1/4/2026 12:13:42 PM | SENT |
| Jackie Struss | | Jackie.Struss@txcourts.gov | 1/4/2026 12:13:42 PM | SENT |